(Decided May 31st, 1859.)

THOMAS WILSON and Others *vs.* JOSEPH B. RUSSELL and Others.

A deed of trust recited that W and W & Co. had agreed to loan the firm, of which the grantors were partners, their notes, *from time to time,* as may be *desired* by the grantors, to an amount not exceeding, in all, at any one time, $36,000, the notes to be payable at six months, and to be

regularly taken up and retired at maturity by the grantors, and such loans of notes to be made *only during the periods of three and four years from the date of the first loan*, viz: loans to the whole amount of $36,000 during the period of three years from the date of the *first loan*, and loans to the amount of $18,000 during one year thereafter. The deed also re-cited, that the grantors were formerly indebted to W and W & Co., in the sum of $6663.64, which has not been paid, and in consideration of such unpaid indebtedness, the grantors have agreed to pay W and W & Co., to be credited on such old debt, *a sum equal to five per cent. of the amount of each note so to be loaned, such amount to be paid as and when each note is loaned*, till the transactions under the deed cease, or the whole of such old debt is extinguished. And, in order to save *harmless* the said W and W & Co., from all loss and injury in the premises, and to *secure* the payment of the amount of five per cent. as aforesaid, on the face of each note to be loaned, the grantors, by the deed, convey certain *specified property* to the trustees *in trust*, that upon the *failure* of the grantees to take up and retire any one or more of such notes as shall be so loan-ed, the trustees shall *sell* the property *at public or private sale, as they shall see fit, and upon such terms as they shall deem proper*, and apply the proceeds to pay, 1st, the expenses of the trust, including a commission of five per cent. to the trustees; 2nd, the notes loaned under the deed, and 3rd, *the balance, if any, to the grantors*. The deed also provides, that *until the happening of the contingency*, upon which they are to sell, the trustees shall permit *the grantors to hold, use, occupy and enjoy the property, and receive the rents, issues and profits thereof, to and for their own use and benefit*, and if the grantors perform their part of the agreement set out in the deed, then to re-convey the property to them discharged of the trust. HELD:

1st. That this deed is in *the nature of a mortgage*, and was intended to se-cure W and W & Co. the payment of their old debt, and the notes agreed to be loaned under the deed; it is not a conveyance *for the benefit of cred-tors*, nor an assignment of the property of the grantees for the payment of some or all of their debts.

2nd. It is not fraudulent in fact because it secures the payment of an *old debt* which was *discharged under the insolvent laws*, for the *moral obliga-tion* to pay such debt remained, notwithstanding the discharge, and is a sufficient consideration to support a promise to pay it.

3rd. Nor does the *mode*, specified in the deed, of paying this old debt, ren-der it fraudulent, there being no proof that this provision was merely colorable, and a device adopted by the parties to secure usurious in-terest on the notes loaned.

4th. Nor does the fact, that some of the notes loaned were *purchased* by W and W & Co., at a *heavy discount*, render the deed fraudulent, such pur-chases having been made eighteen months after the date of the deed, and from third parties, in whose hands the grantees had placed the notes, and who held them for sale in the market.

5th. The *amount* it was intended to secure is expressed in the deed, as required by the act of 1825, ch. 50, and there is no valid objection to it, either under this act, or because it was intended to secure *future advances;* deeds or mortgages, to secure future advances, if *bona fide* made, are good at common law.

6th. This deed being in the *nature of a mortgage,* the provision that the grantors shall remain *in possession* of the property till default made, does *not* render it void, as would be the case if the deed was a conveyance of the grantors' property for the payment of their debts.

7th. In the absence of all proof impeaching the *bona fides* of deeds or mortgages to secure future advances, such instruments are not within the operation of the statute against fraudulent conveyances.

8th. The terms of the deed, in respect to the *power of sale* conferred upon the trustees, are clear and explicit, and not in contravention of any principle of law, and there is no valid objection to the deed in this respect.

9th. The omission to state, on *the face* of the deed, the *time* when the *first advances* were to be made, does not render it invalid; in the case of a mortgage to secure future loans, it is not necessary to designate, in the deed, the length of time during which the loans are to be continued.

10th. To show the actual *amounts* loaned, and to *fix* the duration of the transaction by showing the *time* when the *first loan* was *actually* made, *extrinsic proof* is *admissible,* for such proof does not *contradict* the deed, or *alter,* in any respect, its legal operation and effect.

11th. This deed being to secure future loans, and having been recorded, the advances made under it are a lien on the property in preference to claims under a junior intervening incumbrance, though such advances were made *after,* and with *notice* of, such junior incumbrance.

APPEAL from the Circuit Court for Baltimore City.

On the 15th of February 1856, William Mason and wife, and William Mason, Jr., (the said William Mason and William Mason, Jr., constituting the firm of William Mason &. Son,) executed a deed of trust to St. George W. Teackle and William A. Talbott, in which it is recited as follows:

"Whereas Thomas Wilson and the firm of Thomas Wilson & Co.; of which the said Thomas Wilson, Robt. W. Allen and Wm S. Peterkin are partners, have agreed to loan to the firm of William Mason & Son, their promissory notes, *from time to time, as may be desired by said firm of Mason & Son,* to an amount not exceeding in all, at any one time, the sum of $36,000, in the manner and upon the terms following, to

wit:—The said Thos. Wilson is to loan his individual notes to an amount not exceeding in all, at any one time, the sum of $18,000, and the notes of said firm of Thos. Wilson & Co., are to be loaned to an amount not exceeding in all, at any one time, the like sum of $18,000, said notes, so to be loaned, are to be made payable at six months after date, respectively, and are to be regularly taken up and retired at maturity, by said firm of Mason & Son; such loans of notes to be so made by the said Wilson and Wilson & Co., *only during the periods of three and four years from the date of the first loan made* by said Wilson and Wilson & Co. respectively, to wit: loans to the whole amount aforesaid, *during the period of three years from the date of said first loans,* respectively, and loans to the amount of $18,000 during *one year thereafter.* And it is hereby understood and agreed, that in case either the said Thomas Wilson or the said William Mason should die, before the expiration of the period above limited, within which the said promissory notes are to be loaned, then no other or further loans of any of said notes shall be made, and said agreement shall cease, so far as it might otherwise require any loans of notes after such death, but the notes then outstanding shall be taken up and retired by said Mason & Son, or the survivor of them, as they severally fall due; and upon any default in taking up any one of said outstanding notes, the parties of the second part hereto, or the survivor of them, shall execute the trust hereinafter conferred on them, in the same manner as though such default had been made in the lifetime of the party who shall have died. And it is also agreed, that when any of the notes so loaned shall be taken up and retired by said Mason & Son, such notes, so retired, shall be cancelled and returned to said Wilson and Wilson & Co., as the case may be, before said Mason & Son shall be entitled to any further or other loan of note or notes. And it is also agreed, that said Mason & Son shall, so long as any of said notes may be outstanding and unpaid, at their own expense, insure and keep insured, in the names of the said parties of the second part, the buildings and machinery and property comprised in this deed, to the amount of $36,000, and if they fail or neglect so to do they shall not

63     v 13.

be entitled to any loans of notes, under this agreement, until such insurance shall be made, and said Thos. Wilson and Thos. Wilson & Co., shall have the right to cause such insurance to be made and charge the said Mason & Son with the money paid therefor, which shall be payable immediately, by said Mason & Son, and shall be a lien on said property, and be paid therefrom by the trustees hereby appointed, on a sale of said property, after default in taking up any of said loaned notes. And whereas the said William Mason, and William Mason, Jr., and Henry A. Barling, under the firm of William Mason & Son, *were formerly indebted* to the said Wilson, in the sum of $3014.67, due on the 15th of July 1848, and to the said Wilson & Co. in the sum of $3648.97, due on the 7th of August 1849, *which sums have not been paid.* And the said Mason & Son, *in consideration of such unpaid indebtedness, have agreed to pay,* to said Wilson and Wilson & Co., *to be credited on account of said several sums of money, so formerly owing and unpaid, a sum of money equal to five per cent. on the amount of each note, so to be loaned,* by said Wilson and Wilson & Co., *vaid amount to be paid as and when each note is loaned.* And it is hereby expressly understood and agreed, that the said firm of Mason & Son *hereby undertake to pay only such amount of said old indebtedness as shall be covered by the aggregate of five per cent. of the amount of each note that shall be loaned* as aforesaid, by said Wilson and Wilson & Co., respectively; and upon the completion of the agreement, above set forth, for the loan of notes, or cessation from transactions between said parties, in pursuance of said agreement, then the *whole balance* of said *old indebtedness,* which may *remain unpaid by said per centage on amount of notes to be loaned* as aforesaid, is to be forever *released, discharged and barred,* as fully in every respect as if this instrument had never been executed. And it is also agreed, that if said *old indebtedness, with interest,* shall be *paid by such credits,* and said Wilson and Wilson & Co. should continue the loan of their notes to said Mason & Son, then the *payment of said sums, equal to five per cent. on each*

*note so loaned, shall cease.* And the parties of the first part hereto, in order to *save harmless* the said Wilson and Wilson & Co., from *all loss* and *injury* in the *premises,* and to *secure the payment of the amount of five per cent. as aforesaid, of the face of each note to be loaned,* have agreed to execute these presents.''

The deed then, in consideration of the premises above recited and five dollars current money, conveys to said Teackle and Talbott, and the survivor of them, and the heirs, executors, administrators and assigns, of the survivor, ''all and singular the lands, tenements, hereditaments and leasehold estates, property and other the premises, lying in Baltimore county aforesaid, which by indenture, dated the —— day of ——, eighteen hundred and fifty-six, and recorded or intended so to be, among the land records of said county, were conveyed and assigned by William McKim and others, to the said William Mason and William Mason, Jr., with the improvements, privileges and appurtenances, to the same belonging or in any wise appertaining; and also, all and singular the machinery, fixtures and apparatus, in both the Powhatan and Pocahontas Mills or Factories, on the said property and premises being,'' to hold the same, ''*in trust,* that upon the failure on the part of the said firm of Mason & Son, to take up and retire, any one or more of such promissory notes as shall be loaned by said Wilson and Wilson & Co., or either of them, in pursuance of the agreement hereinbefore set forth, for the space of three months after such note or notes shall become due, then the said trustees or the survivor of them, shall proceed *to sell* the property hereby conveyed, *at public or private sale as they shall see fit, and upon such terms as they shall deem proper,''* and apply the proceeds, 1st, to the expenses of the trust including a commission of five per cent. to the trustees; 2nd, to the payment of such note or notes as may have matured and remain unpaid as aforesaid, with all interest and charges properly due thereon, and to the payment of such sum as may have been paid for insurance as aforesaid; 3rd, to the taking up and retiring at maturity, of all such notes as shall have been loaned by said Wilson and Wilson & Co., in pursuance

of the agreement, with all interest, costs and charges, properly due thereon, "and to the payment of so much as may be then due and unpaid, of said amount of five per cent. stipulated in said agreement;" and 4th, "to pay and transfer the *balance* of said proceeds, if any, to the said firm of Mason & Son." "And upon the further trust, that said trustees shall, *in the mean time, and until the happening of the contingency*, contemplated in the foregoing clause of this trust, *permit and suffer the said parties of the first part*, and their representatives, *to hold, use, occupy and enjoy, the property* above described or referred to, and hereby conveyed, and *the rents, issues and profits thereof, to take and receive, to and for their own use and benefit*, said parties of the first part, however, paying and discharging in the mean time, all taxes, levies, assessments, charges and expenses thereon. And in further trust, that upon the faithful performance of their said agreement, said trustees shall reconvey, assign, transfer and release, unto the said William Mason and William Mason Jr., the property above described or referred to, free from this trust in every respect, as if this deed had never been executed."

The deed was executed by the grantees, and also by Wilson & Wilson & Co., and was duly acknowledged on the day of its date and recorded the day after. There was also an affidavit of the trustees endorsed thereon, that the consideration set forth in said indenture is true and *bona fide* as therein set forth.

On the 22nd of November 1856, William Mason and William Mason, Jr., executed a bond of conveyance to Thomas M. Mason, Charles C. Grafflin and Charles C. Mason, in which it was recited, that the obligors, on the 1st of October 1856, agreed to sell and convey to the obligees, all their interest in the property conveyed by the above deed of trust, for the sum of $127,556, for which, with interest thereon, the obligees delivered to the obligors ten promissory notes of different amounts, drawn by the obligees and payable, at different periods, to the order of Mason & Son, the obligors. This bond was recorded on the 1st of December 1856, and contains this stipulation: "But in case of any default in payment of the aforesaid pro_

missory notes, or any of them, then it is hereby declared to be the agreement of the parties to these presents, the entire indebtedness, on account of all the aforesaid promissory notes, shall then be considered due and demandable, at any time, by the obligors in this bond; and then, and in that case, the said obligors, herein named, may proceed to sell the above described land, property and premises, and apply the proceeds, of any sale made by them, to the extinguishment of all claims against said described or mentioned land, property or premises."

Default having been made by Mason & Son, in the payment and retirement of some of the notes made to them under the above mentioned deed of trust, the trustees, Teackle and Talbott, advertized the property for sale at auction, and thereupon, on the 19th of June 1858, the appellees, Joseph B. Russell and Henry P. Russell, trading under the firm of Russell & Bro., and Charles D. Ellis, and the Bank of Commerce, for themselves and other creditors of Mason & Son and Mason & Brother, filed the bill in this case and obtained an injunction to prevent such sale.

The bill charges, in substance, that at the time this deed of trust was made, Mason & Son were insolvent and unable, from their means and property which they then had, to pay their then existing liabilities; that by the terms of the deed, the loans of the notes were not to be made within any defined or definite or certain period of time, but were to be made whenever Mason & Son might require them, and might be indefinitely postponed and made at any time, however remote, after the execution of the deed, inasmuch as the period when the first loans of the notes was to be made was not specified or fixed by the deed, but made to depend upon the uncertain time or period when a demand or request of the loan of the first notes might be made by Mason & Son, and that because of this uncertainty of time, when the loans might be made, and the incumbrance thereby intended to be created might attach, the deed is fraudulent and void, and ought to be so declared, and set aside as a hindrance and delay of creditors. That the old debts, set forth in the deed, were, at the time of its execution, discharged under a previous application of the

debtors for the benefit of the insolvent laws, and also barred by limitations, and that Wilson and Wilson & Co., contriving and fraudulently intending to obtain security for, and payment of, these pretended claims so barred and discharged, induced and persuaded Mason & Son to enter into the agreement in reference thereto, set forth in the deed, which arrangement was a mere scheme and device, by fraudulent means and contrivances, to avoid the forfeitures and penalties of the statutes of usury, and that the entire contract, as set forth in the deed, was, and is, fraudulent in fact and in law, usurious, null and void, and that the fraud thereof was contrived and devised for the purpose of promoting the illegal intent of taking, receiving and securing, usurious interest, and that, therefore, the deed should be cancelled, annulled and set aside. That the property conveyed by this deed embraced all, or nearly all, the visible and tangible property and estate of Mason & Son, to which they were in any way entitled, and if they possessed any other, it was of little or no value, and was greatly insufficient to pay their just liabilities, and that by this deed, their creditors were, and are almost, if not entirely, remediless, and were, and are, thereby prevented from enforcing payment of their just claims, and hindered and delayed in the collection thereof. That by the terms of the deed, Mason & Son were to remain in possession of the property, until default in keeping their part of the agreement contained in it, and thus all, or nearly all, their visible and tangible property was to be, and in fact was, so arranged and held, that while it should appear responsible for the whole of the fraudulent and usurious contrivances and stipulations of the deed, and be thereby kept from the remedies of their creditors, they might have the full control and enjoyment thereof, until the indefinite period when they might require a loan of one of the notes provided for, and for a period of three or four years thereafter, and until default should be made by them in respect to such note or notes, and Wilson and Wilson & Co., might choose to insist on a sale for account thereof; and it was even further arranged and contrived, that when the property should be ultimately sold, the trustees should still be bound to hand over the surplus to

Mason & Son; by all which, it will appear that the whole deed and its terms were an illegal contrivance for the common benefit of Wilson and Wilson & Co., on the one side, and Mason & Son, on the other, to hinder, delay and defraud the then existing and future creditors of Mason & Son, and to obstruct their lawful actions, and to preserve and maintain their property, subject to the usurious and void contract aforesaid, for their use and purposes, to the exclusion of their then existing, and in fraud of their future, creditors, and for an indefinite period of time, and for these reasons also the deed is fraudulent and void, and ought to be so pronounced.

The bill then states the sale and execution of the bond of conveyance of the 22nd of November 1856, above stated, and charges, that Mason & Son transferred for value to the complainants, Russell & Brother, three of the promissory notes mentioned in this bond, and another for $15,051.59, to the Bank of Commerce, and that Russell & Brother have since endorsed the three notes, so delivered to them, to the complainant Ellis, who now holds the same for value, the endorsers remaining responsible thereon, and that Ellis and the bank are entitled in regard to the notes so held by them respectively, to all the rights and title to, and security upon, the said property which were in said Masons in regard thereto, at the time of and after the execution of said bond of conveyance. The complainants also aver and charge, that at the time of the delivery to them of these notes, neither Russell & Brother, nor the bank, had any knowledge or notice that any advances had been made under the deed of trust by Wilson, or Wilson & Co., if any in fact had been made, which they do not now admit, and that Mason & Son have since, by their mortgage of the 5th of February 1858, duly recorded, (a copy of which is filed as an exhibit with the bill,) assigned and transferred to the complainant Ellis, their interest and estate in said property, so far as they thereby might, to secure the payment of the notes so held by said Ellis, by priority, and in preference, which priority and preference, however, is not admitted by the bank. The bank also charges, that it holds the note so transferred to it as security for a debt of Mason & Son, of

$12,000, or thereabouts, for which, with interest and costs, it has recovered judgments against them.

The bill then states the advertisement of the trustees for the sale of the property, and charges that the notes of Wilson, and Wilson & Co., loaned by them to Mason & Son, were discounted, owing to the embarrassed condition of Mason & Son, at large rates of discount, and with a heavy loss, and at usurious and unlawful rates, and, as the complainants have been informed, and verily believe, some of them were discounted by Wilson, or Wilson & Co., at usurious and unlawful rates of interest.

The bill then charges that the complainants are entitled, by virtue of their interest and property in the notes so held by them, to a sale of the property under the terms of the said bond of conveyance, for the payment of such notes equally and alike, or according to such priorities as the court may adjudge, and in preference to, and notwithstanding the fraudulent deed of trust aforesaid, and that the Bank of Commerce, by virtue of its said judgments, has a lien on the property in preference to said deed; that the property, if sold under fair and advantageous circumstances, is sufficient, or nearly so, in value, to pay all proper and lawful liens and incumbrances thereon, and might, indeed, suffice to pay the debt or claim of Wilson, and Wilson & Co., were the same lawfully due; that if now sold to a *bona fide* purchaser for value, the complainants may and will be greatly embarrassed in, if not entirely precluded from, asserting their rightful equities against such purchaser; that from the present state of the market and trade, manufacturing property, like that in question, is in no demand whatever, and cannot be sold except at a sacrifice of the most ruinous character at this time; that owing to the existence of the aforesaid bond of conveyance, and the cloud upon the title to the property, because thereof, and because of the doubtful rights of the trustees under the illegal and inequitable clauses and provisions patent upon the face of the deed of trust itself, it is impossible the property should sell for more than a small part of its real value, the result of all which will be, that there will be no surplus in the

hands of the trustees to pay the complainants' debts, and the property will be bought in by Wilson or Wilson & Co., or some person for them, at an insignificant price, all adding to the complication of title and remedy of the complainants, and exposing them to irreparable and irremediable wrong and mischief, the said firm of Mason & Son, and Mason & Brother, and all the members thereof, being utterly insolvent, and the property aforesaid being the only resource and chance of payment left to the complainants.

The prayer of the bill is, that the deed of trust may be cancelled and set aside, for an injunction restraining the trustees from selling the property or any part thereof, till further order of the court, and for general relief.

The defendants to this bill were, Thos. Wilson, Thos. Wilson & Co., Mason & Son., Thos. M. Mason, Chas. C. Grafflin, Chas. M. Mason, and Teackle and Talbott the trustees, and the injunction was granted as prayed.

The *trustees* in their *answer* state, that they do not know whether or not, at the time the deed of trust to them was executed, Mason & Son were insolvent and unable to pay their debts, but do know that, at that time, they were prosecuting business with apparent success, and, as respondents believe, meeting their engagements punctually as they fell due. They know nothing of the transactions and dealings between Wilson and Wilson & Co., and Mason & Son, except as derived from their co-defendants Wilson and Allen, and they therefore adopt the answer of Wilson and Wilson & Co., as part of their own. They deny that the deed was made to hinder, delay or defraud, any of the creditors of Mason & Son, but, on the contrary, as they were informed at the time of its execution, and then and now believe, and therefore charge, the same was executed, to enable Mason & Son to pay a balance of purchase money, due on the property thereby conveyed, and to give them facilities in improving it, and carrying on their business. They deny that the deed is fraudulent, in fact or in law, and further deny, that it is usurious, null and void, and that it was contrived and devised, for the purpose of promot-

ing and effecting any illegal intent or purpose whatsoever, and they aver, that it was executed for the purposes and those only set out in the deed itself, which purposes they believe, and therefore charge, were fair, legal and proper. They know nothing of the other property of Mason & Son, then or since, nor do they know any thing of their own knowledge, of the subsequent sale or agreement to sell to Thomas M. Mason and others, as charged in the bill, nor of any transactions in reference to such sale, nor of the claim of the complainants or either of them except from hearsay. They admit they were called upon and requested by Wilson and Wilson & Co., to advertise and sell the property under the deed of trust, (the said parties producing to them evidence of the default thereunder,) and they accordingly advertised the same, as by the advertisement filed with the bill appears, and as they had the right to do. They further say, that the only cloud upon the title of the property was created by the complainants themselves, and they submit, that on the face of the bill itself, it manifestly appears, there is not only no cloud upon the title but no complication of title, and they believe, that the property could have been as readily sold at as good a price when advertised as now. Not admitting any of the other matters set out in the bill, they pray the injunction may be dissolved and they dismissed with costs.

*Thos. Wilson and Thos. Wilson & Co.*, in their *joint answer* state, that at the time of the execution of the deed of trust, they did not know what was the condition of embarrassment and indebtedness, or otherwise, of Mason & Son. They knew that William Mason had been for many years previously, largely engaged in commercial business in the city of Baltimore, and had been unfortunate therein and discharged under the insolvent laws, but after his release he had again engaged extensively in business, but with what degree of profit these respondents had no means of knowing. But whatever was the condition of indebtedness of Mason & Son, these respondents aver, that the transaction with them, which forms the basis of this suit, was in its nature calculated to enlarge the ability of Mason & Son, to pay their debts rather than diminish it.

¹This will be apparent when it is stated, that on the day this deed was executed, to secure these respondents against loss from their loan of $36,000, Mason & Son purchased the same property from William McKim and others, for the sum of $29,100, and actually paid for the same with the very notes advanced by these respondents, or their proceeds, thus adding to their available means the sum of $6900. These respondents therefore deny, that the effect of this transaction was, in any sense, to impair or lessen the means of Mason & Son to pay their pre-existing debts, but, on the contrary, they aver, that by placing in their possession a large manufacturing property upon a long credit, capable of being used profitably for themselves and for any creditors they might have, and by giving them a surplus of capital above the cost of the property, they and their creditors were placed in a more beneficial condition than if this transaction had not been made.

In answer to that part of the bill which charges, that the agreement set forth in the deed is indefinite, in respect to the time within which the notes were to be advanced, and therefore void, these respondents say, that the amount secured by the deed is definitely and exactly stated, and the record of it, therefore, gave notice to all the world of the actual amount which could be charged upon it. But if the power of extending the period within which the loan would become payable, was given by the agreement to Mason & Son, it enured for their benefit and that of all their creditors, since it gave them, and through them their creditors, a longer period for the profitable use and enjoyment of the property, before these respondents could demand that the notes should be finally retired and the agreement ended. But these respondents submit, that the complainants take an erroneous view of the law applicable to this subject. The law of Maryland demands, that the sum intended to be secured by a mortgage should be definitely stated upon its face, that all parties dealing with the mortgagor may have notice of the extent of his liability upon the mortgage. There is no requirement that the length of credit should be stated. If the time should be omitted, the law, through the courts, affixes a reasonable time within which the

money is to be paid. Nor can any harm arise to creditors from this; they are not hindered or delayed in enforcing their claims against the property, and can have the time agreed upon by the parties disclosed, and if none has been agreed upon, a reasonable time declared by the court. These respondents therefore deny, that this agreement was intended to delay, hinder or defraud the creditors of Mason & Son, or that such has been the legal effect and consequence thereof.

They admit that the former firm of Mason & Son was indebted to these respondents in the aggregate sum of $6662.97, and that the debtors had been discharged therefrom under the insolvent laws, but deny that this debt was barred by limitations, judgments having been obtained thereon. But these respondents aver, that though this debt was legally discharged, there yet existed a moral obligation, which the law considers a sufficient consideration for any subsequent promise to pay it, and this debt, being so acknowledged, might have been lawfully paid, or secured by mortgage, by the debtors, in the same manner as any subsequent debt might have been. The transaction was made upon the urgent solicitation of Mason & Son, who called repeatedly upon these respondents to induce them to enter into it, stating, that by it they would be made perfectly easy in their business arrangements and would be enabled, without difficulty, to pay their old debt to them. To secure this debt, these respondents admit, was the inducement to enter into the transaction, and their hope to do so was founded upon the increased business facilities it would give to Mason & Son. These respondents submit therefore, that if their promise to pay this debt would have been legally valid and binding on Mason & Son, supported by no other consideration than the moral obligation to pay, they are at a loss to see, why it should not be equally legal, when the arrangement, under which it is given, affords them the means to pay. These respondents therefore deny, as it is charged in the bill, that this agreement is fraudulent in fact and in law, usurious, null and void, and that the same was contrived and devised for the purpose of promoting and perfecting the illegal intent and purpose of taking, receiving and securing usurious interest,

but, on the contrary, they aver, that the same was *bona fide* and legal, and intended only to secure the payment of the precedent debt, justly due them, in a gradual and easily progressive way, out of the facilities which the transaction afforded to Mason & Son. But even if the transaction was usurious, if sought to be enforced by these respondents, it is nevertheless perfectly valid when assailed in a court of equity, by the complainants, unless they offer to pay these respondents the principal sum and legal interest actually due to them. They therefore submit, that in the absence of such a tender the complainants have no standing in this court upon the question of usury.

In answer to that part of the bill which charges, that the deed is fraudulent and void, because Mason & Son, by the terms of the agreement, might postpone and delay the application for the loan of the notes, for as long a time as they might please, and that while the whole of the property might appear to be subject to the large claim of $36,000, and the additional charge of of five per cent., it might, in fact, not be responsible for any part thereof, these respondents say, that in this respect this deed does not differ, in effect, from any other mortgage to secure advances intended to be made, but in which the maximum amount, for which the property can be made liable, is stated upon the face of the mortgage. The same objection would apply to all such mortgages, for it would be impossible for any third party not specially cognizant of the dealings between the mortgagor and mortgagee, to know, at any particular time, how much had been advanced of the whole sum intended to be secured. But although such third party cannot know the extent of the advances at any particular date, he knows from the beginning the utmost extent to which the property can be encumbered, and for the purposes of notice he is told the worst. How, then, any one could be deceived by the terms of this deed, which was duly recorded, immediately after its execution, these respondents are at a loss to conceive.

Further answering, these respondents say, that whether the property, conveyed by this deed, was all the property of Ma-

son & Son, or not, they had not, at the date of the deed, any means of knowing. They do know, however, and again refer to the fact, that Mason & Son acquired title to the property on the same day they made this deed, and, as these respondents believe, paid the consideration therefor, in whole or in a large part, out of the proceeds of these very notes secured by this deed. Instead therefore of diminishing the estate of Mason & Son, the effect of the transaction was, as before stated, only to add to their pecuniary ability, by the amount of the difference between the consideration, paid by them at the date of the deed, and the amount secured by the deed. But these respondents protest, that however the fact might be, it could not have operated to the injury of the complainants, for they were not creditors of Mason & Son, at the date of this transaction, and did not become so till some time after the deed was recorded, so that they became so with full knowledge of the deed, and the extent of the liability imposed upon the property thereby. These respondents insist therefore, that the complainants are in no condition to object to the validity of a deed, of which they had full knowledge before they assumed the relation of creditors.

These respondents, further answering, say, that the provision in the deed, by which Mason & Son were to remain in possession of the property till default was made, and the further provision, by which, in case the trustees were required to sell the property, the surplus, after discharging whatever might remain to be paid upon the agreement, was to be paid over to Mason & Son, were the usual clauses inserted in such deeds, and were, in themselves, legal and proper. And as to the charges of usury and fraudulent arrangements and contrivances between these respondents and Mason & Son, if not sufficiently denied before, these respondents do now again, most distinctly, deny, that there was any usurious contrivance practiced, or intended to be practiced, by the terms of the deed, or that there was in fact, or intended to be, any contrivance or stipulation whereby the creditors of Mason & Son were to be kept from any of their remedies and proceedings, or that Mason & Son were to have any control or enjoyment of the property, in op-

position to the just claims of their creditors, or that the deed, or the trusts thereof, were an illegal contrivance for the common benefit of these respondents and Mason & Son, and to hinder, delay and defraud their creditors then being, or thereafter to be, or to obstruct their lawful actions, or to reserve and retain the property of Mason & Son, subject to any usurious and void contract, for the use and purposes of Mason & Son, to the exclusion of their then existing, or in fraud of their future, creditors, or for any indefinite period of time. And they not only deny the same as matter of fact, but they also deny, as matter of law, that the deed can, by its effect and operation, produce any such results.

Further answering, they admit, that after the execution of the deed, and after the same had been recorded for a period of seven months and a half, the bond of conveyance exhibited by the complainants, with their bill, was executed, and they are willing to admit, though they had no personal knowledge of the fact, that the complainants became the owners of the notes set out in the bill, but these respondents leave all questions of priority among the complainants, as alleged in the bill, to be adjusted among themselves. And in answer to the allegation, that Russell & Brother and the Bank of Commerce, at the time of the delivery of the notes, respectively claimed to be held by them, had no knowledge or notice that any advances had been made by these respondents under the deed, these respondents aver they had notice of the existence of the deed, and of the extent to which the property therein conveyed might be made liable by advances, and they were bound, therefore, to presume that the whole sum had been advanced, or deal with Mason & Son, in respect to the property, at their own peril, upon any other hypothesis that a less sum had been advanced.

They admit, that having advanced the whole of the notes secured by the deed, and default having been made by Mason & Son, in the taking up and retirement of the same, they requested the trustees to sell the property, who did accordingly advertise and were proceeding to sell, until restrained by the injunction in this case.

Further answering, these respondents say, that they do not know at what rates the notes advanced by them were discounted, but they presume, that inasmuch as the names of these respondents were ranked among the first class of commercial names, they were discounted at the current rates of such paper at that time. These respondents admit, that after the notes had been advanced to Mason & Son, and after they had gone into the market as commercial securities, some of them were brought to these respondents, by brokers, for sale, and pursuing the usage, in that behalf, which is extensively practiced among merchants, who, for the preservation of their credit, withdraw their paper from the street by purchasing the same, they did buy several of said notes for a sum less than their face, with legal interest off, but they deny, most positively, that they ever bought any of said notes from Mason & Son, or from any agent of theirs, knowing him to be such, or that they ever had, with them, any agreement or understanding that they would buy said notes, or any part of them.

They further deny that the complainants are entitled, under and by virtue of the interest and property in the promissory notes claimed to be held by them, to a sale of the property, or that the Bank of Commerce has, by virtue of any judgment, a lien on the property. Nor can they say what the property, if sold under fair and advantageous circumstances, would produce, nor whether the same will suffice to pay the claim of these respondents. But they do aver, that the complainants, by the injunction which they have caused to be issued in this case, have prevented the trustees from making a fair and advantageous sale of the property, and lawfully applying the proceeds according to the terms of the deed of trust. And they further aver, that there does not now, and never has existed, any cloud whatever, upon the title to the property, except such as the complainants, by their bill, have themselves made, and if such a pretext as this furnishes a just ground for equitable interference, on account of cloud on title, then any sale may be enjoined by first raising the alleged cloud and then using it as a ground for relief. Your respondents, therefore, respectfully ask, that the injunction issued in this case may be dissolved, and the bill of the complainants dismissed.

The defendants, Wilson and Wilson & Co., then moved to dissolve the injunction, and this motion having been set down for hearing, a commission was issued, under which testimony was taken.

Under this commission the complainants proved the exhibits filed with their bill, and from the *proof* taken it appears, that the transactions between Wilson and Wilson & Co. and Mason & Son, so far as the loans of notes under the deed of trust are concerned, commenced on the 15th of February 1856, the date of the deed, (several notes, both by Wilson, individually, and by Wilson & Co., having been loaned on that day,) and terminated on the 2nd of November 1857. There were four sets of notes actually loaned, each set amounting to $36,000. The *first set* was loaned between the 15th of February and the 18th of July 1856, and were taken up by Mason & Son at maturity, and new notes *(second set)* given therefor between the 18th of August 1856 and the 21st of January 1857, which also were taken up by Mason & Son at maturity, and new notes *(third set)* given therefor between the 21st of February and the 24th of July 1857, which also were taken up by Mason & Son at maturity, and new notes *(fourth set)* given therefor between the 24th of July and the 2nd of November 1857, which last, or some of them, were not taken up. These notes were discounted by various parties, most of them being placed by Mason & Son in the hands of McKim & Co., brokers, and sold by them at various rates, from six to twenty-four per cent., the legal interest on all amounting to $4433,98, and the extra interest to $3953.28, and the *five* per cent., deducted under the terms of the deed, to $7200. It was also proved, that, on the 24th of August 1857, Thomas Wilson purchased three of these notes, amounting to $6000, at twelve per cent., and on the 21st of September 1857, two others, amounting to $2000, at twenty-four per cent. These notes, so purchased, had been placed, by Mason & Son, in the hands of McKim & Co. for sale, and were sold by them to Wilson. It was also proved that Mason & Son kept a bank account with McKim & Co., and the latter, in almost all cases, advanced money to the Masons on the

day they brought the notes there; on one or two occasions, they left notes for sale and did not receive the money till they were sold, but this was when money was easy, and could not have been after August 1857. It was also proved, that part of the proceeds of these notes, $12,000, was paid by Mason & Son on the property, being the final payment thereon, to the Bank of Baltimore. The records of the judgments in favor of Wilson and Wilson & Co., for the old indebtedness of Mason & Son to them, were also filed under the commission.

Upon the hearing of the motion to dissolve, the court (KREBS, J.) delivered the following opinion:

"Several questions have been discussed, upon the hearing of this motion, which it may be necessary for the court to decide at some future stage of this cause. Those only that have a bearing upon the enquiry, as to the validity of the deed of trust referred to in the proceedings, can properly claim consideration at this time. Can this deed then, be sustained by this court as a valid instrument of writing? I am of opinion, that there are no extrinsic facts or circumstances presented to the court in the record that show this deed to be void, and that therefore the question of its validity is to be decided by its terms and provision; in other words, if void at all, it is void upon its face.

"It is in form a deed of trust, intended to secure the payment of certain promissory notes that Thomas Wilson, and Thomas Wilson & Co., respectively, had agreed to loan to William Mason & Son, and also the payment of two sums of money, in which William Mason & Son were formerly indebted to Thomas Wilson, and Thomas Wilson & Co., respectively. The deed provides, that Thomas Wilson shall loan his notes 'to an amount not exceeding, in all, at any one time, the sum of $18,000,' and that Thomas Wilson & Co., shall, in like manner, loan theirs, to the same amount, 'said notes so to be made payable at six months after date, respectively, and such loans of notes, to be so made, by the said Thomas Wilson and Thomas Wilson & Co., only during the periods of three and four years *from the date of the first loan by the said Thomas Wilson,* and the said Thomas Wilson &

'Co., respectively, to wit, loans to the whole amount, as aforesaid, during the period of three years *from the date of said first loans*, respectively, and loans to the amount of 18,000 dollars, during one year thereafter.' The allegations in the bill, in regard to the pecuniary means of the Masons, and in regard to the extent of their property and effects at the date of this deed, not being denied in the answers, they must, on this motion, be assumed to be true, and I must, therefore, regard them as being at that time in insolvent circumstances, and as having little or no other property besides that conveyed by this deed. This property consisted of a tract of land in Baltimore county, with several cotton factories thereon, and by the terms of the deed, the use and enjoyment of the whole was secured to the grantors, until they made default in the payments required thereby.

"This, then, is a deed given to secure advances to be made to an amount expressed by the parties on its face, and particularly mentioned to be secured thereby, and by thus specifying the amount they have fully complied with the requirements of the Act of 1825, ch. 50. Its validity cannot be questioned upon the ground, that it professes to be given as a security for future loans or advances. The authorities are abundant to show that securities by way of mortgages, or otherwise given for such a purpose, are perfectly valid. The case of *Cole vs. Albers & Runge*, 1 *Gill*, 424, is a direct authority to show, that where the mortgage for such purpose specifies the amount to be covered, it is unimpeachable. The court there says: 'Such transactions the law was designed to meet; but not a case like this, where the amount is stated; where the world is apprised of its limits, and where the parties design to *cover all advances which may be made, to the extent of the sum limited in the mortgage.*'

"But the peculiarity of this deed is, that it designates no specific time when the loans or advances that it provides for, shall commence. It stipulates that Thomas Wilson shall advance the amount of notes which he agrees to loan, during the period of three years only from the date *of the first loan made by him;* and that Thomas Wilson & Co. shall advance

the amount of notes that they agree to loan, during the period of four years from the *date of their first loan,* but seems to contemplate that all the loans shall be made during a period of four years, from a date, however, which is left indefinite. The question therefore arises, can a party in the pecuniary condition in which the Masons were at the date of this transaction, convey nearly his entire property to another, professedly for the purpose of securing a specified amount of future advances, to be made during a long period of years, by a deed which designates no time when the advances are to commence? Is not such a deed open to the imputation, that it hinders and delays the creditors of the grantor?

"It is to be observed, that, by the provisions of this deed, the possession and enjoyment of all this property is reserved to the grantors, until they make default in the payment of some of the notes to be loaned to them. It is therefore reserved to them for an indefinite time, inasmuch as there can be no default until after a loan, and no time is fixed for the loans to commence. The opinion of the Court of Appeals in this State, in regard to the vitiating effect of provisions in deeds of this character, that give to the grantor the use and enjoyment of this property conveyed, or otherwise protect it from his creditors for an *indefinite time,* is very clearly expressed in several cases. In *Green & Trammell, vs. Trieber,* 3 *Md. Rep.,* 27, the court says: 'But the grantor reserves to himself the possession and enjoyment of all the property for an *indefinite time,* if the trustees should not think proper to sell,' &c. In *The American Exchange Bank vs. Inloes,* 7 *Md. Rep.,* 391, the court says: 'A debtor cannot thus postpone his creditors to an *indefinite period* without their assent. A conveyance which thus *attempts* to deprive creditors of their just rights to enforce their claims against the property of their debtor, by placing it beyond their control, for an *uncertain* and *indefinite period,* must be regarded in *conscience and law as a fraud.*' In the case of *Arthur vs. the Comm. & Rail Road Bank of Vicksburg,* 9 *Sme. & Mar.* 432, the court says: 'A far more important and serious difficulty, however, remains. These assignments are of *indefinite duration.*'

"It is a settled rule of decision in such cases, that any provi. sion which materially hinders creditors in the assertion of their rights, especially when coupled with a reservation of any part of the property to the grantor in the deed, makes the whole void. They say of the deed in that case: 'Its direct tendency is to lock up the estate *indefinitely*, to *hinder* and *delay creditors unreasonably.*' It is difficult to conceive of a scheme, better calculated than that which is presented in the provisions and purposes of this deed, by which a dishonest debtor could withdraw his property from the reach of his creditors, and thus hinder and delay them. It would require nothing but concert between the parties to it, to be eminently successful. It stipulates for nothing to be done by the one party, until called upon by the debtor making the conveyance; the former pays no money in the first instance, incurs no responsibility, but simply holds the legal title to the property conveyed, whilst the grantor enjoys the use and profits indefinitely, unless he should apply for an advance. It appears to me, that a deed, so framed, can only be regarded as having the effect of hindering and delaying creditors.

"It is said, however, in answer to the objection, that though no time is fixed in the deed for the advances to commence, yet the law would require the Masons to call for them in a reasonable time.. It is true, that the parties to the deed, who are to make the advances, may perhaps be discharged from their liability, unless called upon in a reasonable time, but it is also true, that they may not choose to avail themselves of this right, and may continue to hold the property, waiting professedly for a demand to be made. This is precisely what would be done by parties to a deed, framed as this is, who would combine together for the dishonest purpose of hindering and delaying creditors. And further, conceding that creditors might be entitled to rely upon the ground, that their debtor had failed to exercise his rights, under a deed like this, within a reasonable time, and that therefore it ought not to be allowed to stand in their way any longer, they would be driven into a court of chancery to assert this privilege; they would be forced there, or in some other *forum*, to litigate the question of reasonable

time, and such other issues as might be raised against them. The deed would stand as an effectual obstacle to the satisfaction of their claims, out of the property covered by it, until by such legal proceedings it should be annulled. All this would certainly operate a most practical and ruinous hindrance and delay to creditors. The law surely will not tolerate suchy obstacles, to hinder and delay creditors, as may be set up under a deed with such provisions as are found in this.

"I have considered this deed only as it appears upon its face, without taking into view any extrinsic circumstances, connected with the transaction, which it professes to carry out. I understand that the question, as to the validity of this instrument, is not to be decided by extrinsic circumstances. The rule upon this subject is so distinctly settled, by many decisions in our Court of Appeals, that it is only necessary to refer to that in which it was last considered, viz: *Inloes vs. American Exchange Bank,* 11 *Md. Rep.,* 183. The court there refers to the different cases, in which the rule had been applied, and repeats it in the language in which it is expressed in those cases, as in *Green & Trammell vs. Trieber,* 3 *Md. Rep.,* 11: 'We take it to be well settled, that an instrument, void in law for matter appearing upon the deed itself, cannot be made good by averment.' 'There is nothing for the jury to pass upon when the court can see, that the instrument is fraudulent on its face. We are to look to the character with which the law stamps the deed, without reference to *extrinsic facts, as to motive.* If the *law declares such deeds to be void,* it *is no matter how the question of fraud, in fact,* may stand.' So in *Sangston vs. Gaither,* 3 *Md. Rep.,* 40, the court say: 'This view of the case,' that is, in reference to *extrinsic facts,* 'cannot change the character which the law gives to the assignment.' And in *Malcolm vs. Hodges,* 8 *Md. Rep.,* 418, it was decided, 'that the validity of such deeds must be determined *without regard to surrounding circumstances.*' 'We *cannot look outside the assignment to ascertain whether there will be a surplus or not.* That would make the efficacy of the instrument depend on extrinsic circumstances, when the law *requires that its intent* shall *be gathered from its face.*'

After referring to these passages, the court at last says, in the case in 11 Md. Rep., 184, '*These principles are the settled law of this Court.*' These principles and rules being so inflexibly settled by the court of highest authority, I am imperatively bound by them, and must close my eyes to all the extrinsic facts and circumstances of this case, and confine my view exclusively to the terms and provisions of the deed itself. Restricting my view within these limits, I am constrained to declare the opinion, that this deed is void and inoperative, as having the tendency and effect to hinder and delay creditors.

"I omitted to state in a former part of this opinion, that, in all the cases that have come to my notice, in which the courts have sustained the validity of deeds to secure future advances, a time was definitely fixed for closing the trust. See *Cole vs. Albers & Runge*, 1 *Gill*, 412."

An order was then passed continuing the injunction till final hearing, and from this order the defendants, Wilson and Wilson & Co., and the trustees appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Geo. W. Dobbin* and *Reverdy Johnson* for the appellants:

The deed of the 15th of February 1856, is assailed, 1st, because of fraud in fact, and 2nd, because of fraud in law, and 3rd, it is said, that the decree below is correct, because of an intervening equity in the appellees, paramount to that of the appellants under this deed.

1st. *As to fraud in fact.* The deed upon its face furnishes no evidence whatever of actual fraud; it was recorded the day after its date; the consideration is fully stated in it, and the responsibility assumed thereby on the part of Wilson and Wilson & Co., was very great, and utterly inconsistent with a design to perpetrate a fraud. It secures, and was designed to secure, an old debt. Is there any fraud in this? The proof shows, that the grantors themselves made the application for the loan, and the Wilsons had a perfect right to say, that before they made it they must be paid their old debt. Though

discharged by the insolvent laws, this debt yet existed as a moral obligation, and any subsequent promise to pay restored it to all its former vigor; no principle is clearer than that an existing *moral* obligation, coupled with an antecedent *legal* obligation, is a sufficient consideration for a valid and binding promise.  *Chitty on Contracts*, 48, 49.  3 *Bos. & Pul.*, 249, *Wennall vs. Adney, and note.  7 Conn.*, 57, *Cook vs. Bradley.*  Nor is there any evidence of fraud, in the *mode* in which the deed makes provision for this debt.  If the money had been in hand, and paid by the Masons at the time this loan was effected and the deed executed, and as an inducement to its execution, there could have been no pretence of fraud.  How then could an inducement given to the Masons to make the promise, and a pecuniary facility to comply with it, vitiate a transaction which, without such inducement, would have been legal and valid?  If payment, or a promise to pay, voluntarily made by the *debtor,* would have been fair, how can there be any thing *unfair* in paying or in *promising* to pay, even if the request came from the *creditor?*  And if there is no fraud in paying or promising to pay this old debt, in whole or in part, there can be none in securing its payment gradually as the deed provides.  The only evidence of fraud outside of the deed, is the fact, that Wilson *purchased* three of these notes, and this, in connection with the reservation of five per cent. in discharge of the old indebtedness, is said to be usury, and as such evidence of fraud.  These purchases were not made till nearly two years after the date of the deed.  There is no pretence of usury in the *inception* of the transaction, and there was none in the *purchase* of these notes, for McKim & Co. had advanced on them, and had a right to sell them at any price they could in the market, to realize their advances.  1 *H. & G.*, 482, *Sauerwein vs. Brunner.*  10 *Md. Rep.*, 65, *Williams vs. Reynolds & Smith.*  On the day of its execution, notes under this deed to the amount of $18,000 were issued, and if the Wilsons had designed a fraud, or to drive a hard bargain, why did they not purchase some of these during the seventeen or eighteen months they were in the market?  That there was no usury as manifesting *mala*

*fides* in the original contract, is evident from the fact, that the deed declares, that all of the old debt not paid by the five per cent. on each note loaned, shall still be considered as barred. The purchase of the notes, also, furnishes as little evidence of my *original intent* to defraud. But if the Masons or any one claiming under them, seek to get rid of this deed by relying on usury, they must do what a court of equity requires in such cases. No advantage can be taken in equity of usury, except upon a tender of the principal and legal interest actually due, and usury being a mere statutory wrong affords no ground from which fraud in fact can be inferred. 6 *G. & J.*, 18, *Trumbo vs. Blizzard*, 7 *Gill*, 158, *Carter vs. Dennison*, 6 *H. & J.*, 100, *Lucas vs. Latour*. And under the recent decision of this court, in *Bandel vs. Isaac*, no party has a right to come even into a court of law and plead usury, without tendering the amount really due with legal interest He can do this in no case either directly or incidentally to affect the question of fraud or otherwise. Nor does it make any difference, that the property embraced in this deed was all the property the Masons had at the time, for this cannot in any way affect the integrity of the deed. It did not make them one cent poorer than they were before. In the absence, then, of every title of evidence, to show any corrupt agreement between the parties, having for its purpose the delay, hindrance or defrauding of creditors, it cannot be said, that this deed is void for *fraud in fact*. It is also to be observed, that the statute of 13*th Elizabeth* only avoids conveyances which are fraudulent and covinous, and *originally* intended to hinder, delay and defraud creditors, and that an *innocent grantee*, no matter how guilty the grantor may have been, is not within the provisions of the enacting clause of this statute.

2nd. *As to fraud in law:* In considering this question it must be borne in mind, that this is not an ordinary deed of trust or a voluntary assignment for the *benefit of creditors*, but is, in effect, *a mortgage of specific property* for a *specific purpose*, and the distinction between such conveyances is clearly pointed out in *Green & Trammell vs. Trieber*, 3 *Md. Rep.*, 36. The decisions, therefore, in reference to deeds of

trust *fvr the benefit of creditors*, have no application to the provisions of this deed. Hence, the stipulations that the grantors shall remain in possession, and that the surplus proceeds of sale, after satisfying the objects of the deed, shall be paid over to the grantors, are but the ordinary provisions in, and effect of, every *mortgage*, and are not fraudulent or evidence of fraud, so as to render the deed void, for if they do, then no mortgage can be valid. 3 *Cranch*, 89, *United States vs. Hooe, et al.* Nor can it be any objection to this deed that it secures *future advances*, for a mortgage, if made *bona fide*, may be for future advances as well as for an existing debt. 2 *Johns. Ch. Rep.*, 304, *Hendricks vs. Robinson.* 5 *Binney*, 585, *Lyle vs. Ducomb.* 5 *G. & J.*, 317, *Clagett vs. Salmon.* 1 *Gill*, 423, *Cole vs. Albers & Runge.* 1 *Pet.*, 448, *Conrad vs. The Atlantic Ins. Co.* This was the doctrine of the common law, and it has been modified by our act of 1825, ch. 50, only to the extent of requiring the *amount* to which the future advances may be made, to be *stated* in the deed, (1 *Gill*, 423,) and this has been done in the present case. The only requirement to the validity of a mortgage, by the law of Maryland, is, that it shall be for a *bona fide* debt or liability, and that the amount shall be stated on the face of the mortgage. This deed being duly *recorded*, notified all the world of the *extent* to which it could be an incumbrance on the property, for it fixes a *limit* in amount beyond which the advances cannot be made under it. But the chief objection urged against this deed, by the appellees, is the alleged *indefiniteness* of the *duration* of the *incumbrance*. It is said this incumbrance is *indefinite* as to the *time* at which it may *commence*, because no period is specified within which the *first loan* under it is to be called for by the mortgagors. But there exists, on the face of this deed, a *contract to loan*, upon which suit could have been instituted by the mortgagors immediately upon its execution; and where no time of payment is specified in a mortgage, the law implies that it is to be paid in a *reasonable time*. 10 *Md. Rep.*, 233, *Farrell vs. Bean.* 11 *Md. Rep.*, 463, *Triebert vs. Burgess.* But if this be a valid objection on the face of the deed, still the *evidence in*

the case shows that the *first loans* were actually made on the very day the deed was executed, and this being proved, the duration of the incumbrance becomes definite and fixed. Why is not such evidence admissible? The only ground on which it can be held inadmissible is, that it contradicts, varies or modifies the deed, so as to make it inconsistent with what appears upon its face. So far, however, from doing this, the evidence in question establishes the very existence of the deed by giving it operation and efficacy at once. But the very point was decided in the case of *Cole vs. Albers & Runge*, and is no longer an open question in this State. A deed absolute on its face may be shown, by parol evidence, to be a mortgage. 1 *Md. Ch. Dec.*, 178, *Clark vs. Levering*. *Ibid.*, 536, *Bank of Westminster vs. Whyte*. 2 *Md. Ch. Dec.*, 430, *Thompson vs. Banks*. 3 *Md. Ch. Dec.*, 521, *Ing vs. Brown*. 10 *Md. Rep.*, 217, *Farrell vs. Bean*. Again, it is said, that under this clause of the deed, the parties *may* combine to commit a fraud. But the question of collusion, in the absence of proof of actual fraud in this particular, has nothing to do with this case, unless a mortgage to secure future advances is, in every case, fraudulent, for in every such case the advances depend upon the borrower, and there *may be collusion*, and yet deeds of this character have always been held valid. · Moreover, the deed being of record, notified every one of the amount of the mortgage, and put the appellees on inquiry as to what sum, if any, the Wilsons had advanced under it; and whatever is sufficient to put a party on inquiry is sufficient notice. 5 *Conn.*, 446, *Stoughton vs. Pasco.* Again, it is objected, that inasmuch as the trustees would have to be informed by the Wilsons when default was made, this might never be done, and the trust would thus continue forever. This argument assumes, that the Wilsons would never ask for the *indemnity* which they had taken, and might be urged with equal force against every mortgage for indemnity. For these reasons we respectfully submit, that this deed is not void for fraud in law.

3rd. *As to the intervening equity*: We have already shown that the deed, having been recorded, gave notice to these par-

ties of the *extent* of the incumbrance on the property. When, therefore, the bond of conveyance, under which the appellees claim, was executed, they had notice of the prior deed, and that, by its terms, Wilson and Wilson & Co. had a lien to the extent of $36,000, on loans either then made, or which might thereafter, within the prescribed period, be made. It was, then, their own folly to trust to the security of the bond of conveyance, and that bond cannot operate to the exclusion of the lien under the prior deed. This point was decided in *Gordon vs. Graham*, 2 *Eq. Cases, Abr.*, 598, and, also, in *Lyle vs. Ducomb*, 5 *Binney*, 585. Moreover, the notes loaned after the bond were but *renewals* of those previously given.

*S. T. Wallis* and *Geo. M. Gill* for the appellees, argued:

1st. That the deed of trust of the 15th of February 1856, is invalid, fraudulent and void, and was made to hinder and delay creditors, because, as appears upon the face of it, it was made by insolvent parties, and embraced all their property, to secure the payment of certain notes to be thereafter loaned, but not within any given, fixed or definite period of time, and it was left to the grantors to retain the property thereby granted in their possession and use without incumbrance, until they should request the loan of the notes therein mentioned, and for three or four years after the first of the loans of these notes; that the loans of the notes ought, by the terms of the deed, to have been made within a reasonable time, and not left to the discretion of the grantors; and also, because the object and intent of the grantees Wilson and Wilson & Co., as apparent upon the face of the deed was unlawful, it being the manifest intention, to secure to themselves the payment of the notes to be loaned, and interest from the time they became due, and also a profit or *bonus* of ten per cent. per annum, upon such loans of notes, and that while the grantors were to retain their property for an unlimited time subject to the agreement in the deed, these grantees were to be paid ten per cent. per annum, for the use of their names in the loans of such notes.

The objections apparent upon the face of the deed, and

which, as we insist, render it void, are 1st, the indefinite period within which the first loan might be made, and the incumbrance therefore, commence, with possession of the property, in the mean time, in the grantors; 2nd, the indefinite time within which the trustees might be called on to sell; and 3rd, the reservation of the surplus to the grantors.

In considering these objections, the deed must, it is submitted, be construed upon its face, without reference to extrinsic circumstances, for though equity will, upon proof of fraud, mistake or surprise, rectify an agreement, according to the intent of the parties, yet it will not interfere where the instrument is such as the parties themselves designed it to be; if they voluntarily choose to express themselves in the language of the deed they must be bound by it, and where the question is one of fraud or not, extrinsic evidence cannot be brought in to aid the deed. 2 *Md. Rep.*, 35, *McElderry vs. Shipley.* The same doctrine was emphatically announced in the cases of *Trammell vs. Trieber*, 3 *Md. Rep.*, 40; *Sangston vs. Gaither, Ibid.*, 53; *Malcolm vs. Hodges*, 8 *Md. Rep.*, 425, and *Inloes vs. American Exchange Bank*, 11 *Md. Rep.*, 183, and the same case in 7 *Md. Rep.*, 380. Nor is this deed to be regarded simply and exclusively as a mortgage; the appellants in their answer state, that the inducement to make it was to secure the old debt which had been discharged under the insolvent laws, and to do this they agreed to advance their notes to the amount of $36,000, in consideration of the advantages given them in the deed. But it matters not what the *form* of the instrument may be, provided its effect is to hinder and delay creditors, it is void. Can there be a doubt that such is the effect of this deed? There is no time specified within which the loans are to commence, nor when the sale is to take place. All this is dependent entirely upon the will of Wilson and Wilson & Co., on the one side, and the Masons, the grantors, on the other, and all this time the grantors remain in possession, and in case a sale should take place the surplus is expressly reserved to them. A more perfect arrangement could scarcely be devised, by which property might be kept from the reach of creditors. For under it the parties have power by collusion to

hold the property from the creditors of the grantors, for an *in-definite period*, whilst the latter retain its possession and beneficial enjoyment. That the law will not permit this to be done, the Maryland *cases* already cited clearly establish, and such are the decisions every where. 9 *Smedes. & Mar.*, 432, *Arthur vs. Commercial and Railroad Bank of Vicksburg.* 1 *Iredell*, 497, *Hafner vs. Irwin.* 1 *Iredell's Eq. Rep.*, 183, *Kissam vs. Edmundson.* 26 *Ala.*, 185, *Montgomery vs. Kirksey.* 7 *How.*, 278, *Bodley vs. Goodrich.* 15 *Eng. Law & Eq. Rep.*, 528, *Smith vs. Hurst.* The case of *Cole vs. Albers & Runge*, is distinguished from this, that there the *amount* was not only fixed, but the deed itself by its own terms, prescribed the time within which the money was to be paid. It was definite both as to time and amount. Here the case is different, for though the amount is fixed, yet the time within which the loans are to commence is entirely indefinite. In the case of *Shepard vs. Shepard*, 6 *Conn.*, 41, a mortgage to secure a note endorsed, and to be a security "for any and all other notes *hereafter* endorsed," was held, as to the latter stipulation, to be perfectly *indefinite* and void. And in *Pettibone vs. Giswold*, 4 *Conn.*, 158, a similar provision in a mortgage was held to render it void as against the creditors of the mortgagor.

It is also insisted, that the evidence in the case, showing that Wilson purchased these notes at large discounts, taken in connection with the terms of the deed, securing as it does an old debt discharged under the insolvent laws, by taking out of each note loaned, a sum equal to five per cent. of the face of the note, and the fact of the insolvent circumstances of the Masons, clearly show, that the whole transaction was concocted and designed as a cover to conceal usury, and as a fraudulent hindrance and delay of creditors, and that the deed is therefore void for fraud in fact.

2nd. That the sale of the property conveyed by the deed, under the circumstances would result in loss, the title being under a cloud and doubtful, the purchaser not being able to get a good title under a deed tainted by usury, and fraudulent and oppressive in its terms.

3rd. That although complainants, in a court of equity, cannot ask to set aside a conveyance, on the ground of usury, without tender of principal and legal interest, yet they may seek to prevent a sale, while the title is doubtful and until it be ascertained, whether the transaction be usurious, fraudulent and oppressive or not. 1 *Md. Ch. Dec.*, 473, *Boyd & Hance vs. Harris.*  3 *Daniel's Ch. Pr.*, 1873.

4th. That the notes of Wilson and Wilson & Co., which were loaned under the deed prior to the sale of the property by Mason & Son, to Thomas M. Mason and others, and prior to the recording of the bond of conveyance given on such sale, having been retired and paid, and Wilson and Wilson & Co., having exacted another *bonus* of five per cent. commission, and having lent new notes after this sale and recording, and after notice to them of the sale, and after the negotiable notes of Thomas M. Mason and others, given for the purchase money, had been passed to the appellees, the priority on the part of Wilson and Wilson & Co., which they might have had, as respects the notes loaned prior to the sale, does not exist, but has been destroyed, and their interests are subsidiary to those of the appellees.

The intervening equity thus set up is clearly sustained by decisions of the highest authority. 17 *Ohio*, 371, *Spader vs. Lawler.*  2 *Barr.*, 96, *Ter Haven vs. Kerns.*  5 *Johns. Ch. Rep.*, 326, *Brinkerhoff vs. Marvin.*  7 *Cranch.*, 34, *Shirras vs. Caig, et al.*  2 *Sandf. Ch. Rep.*, 78, *Craig vs. Tappin.* 3 *Barb. Ch. Rep.*, 293, *Bank of Utica vs. Finch.*  2 *Selden*, 147, *Truscott vs. King.*

5th. That no sale of the property ought to be made until a decision be first had upon the two questions involved, one of usury and fraud in the deed, and the other of priority and preference, as between Wilson and Wilson & Co., and the appellees, and that while the cloud over the title, and the doubt, as to the mode of distribution, exists, no sale should be made, and, on this ground, the injunction should be continued; and that Wilson and Wilson & Co., having lost their right of priority, by making new advances and taking an additional commission, after the rights attached under the bond of con-

veyance, and after the assignment of the notes given under the bond, could not lawfully demand and require the trustees to sell, without the concurrence of the parties, obligees in the bond, and of the holders of their negotiable notes.

6th. In transactions between mortgagor and mortgagee, the mortgage will be set aside, by a court of equity, as fraudulent, where it manifestly appears, that the mortgagee has taken advantage of the necessities of the mortgagor, and this is especially true where it appears, that the rights of subsequent encumbrancers are concerned. *Hovenden on Frauds*, 180, 181, 217. 9 *Ves.*, 271, *Chambers vs. Goldwin.* 1 *Sch. & Lef.*, 195, *Drew vs. Power.* 2 *Md. Ch. Dec.*, 386, *McDowell vs. Goldsmith.*

BARTOL, J., delivered the opinion of this court.

Several objections to the validity of the deed of trust, of the 15th of February 1856, have been urged by the appellees, which it is necessary for us first to consider in the decision of this appeal. That deed is in the nature of a mortgage, and was intended to secure to Thomas Wilson and Thomas Wilson & Co., the payment of certain sums of money, which William Mason & Son (the mortgagors) formerly owed them; and also to secure the payment of certain promissory notes, which the said Wilson and Wilson & Co., respectively, agreed to loan to said Mason & Son.

It has been assailed as fraudulent in fact, upon two grounds, first, because it secures the payment of debts which W. Mason & Son were not legally bound to pay, they having before been discharged therefrom under the insolvent laws; and secondly, because some of the notes loaned under the mortgage were afterwards purchased by Thomas Wilson, one of the mortgagees, at large discounts, much greater than the legal rate of interest.

The old debt had never been paid, the moral obligation to pay it remained, notwithstanding the release of the debtors under the insolvent laws; and there is no principle better established than that such moral obligation is a sufficient consideration in law to support a promise by the debtor to pay the

debt. See *Chitty on Contracts*, 48, 49, and the cases collected in 3 *Bos. & Pul.*, 249, *note*, and also 7 *Conn.*, 57, where the rule is perspicuously stated.

If Mason & Son were under a moral obligation to pay the old debt, their agreement to secure the same, or any part of it, cannot render the deed fraudulent. The stipulation with regard to the payment of the old debt is, that a sum equal to 5 per cent. of the amount of each note so to be loaned, by Thomas Wilson and Thomas Wilson & Co., shall be paid by W. Mason & Son, such payment to be made when each note is loaned, and to be applied toward the extinguishment of the old debts.

This provision is somewhat novel, and it has been contended, on the part of the appellees, that it is merely colorable, and is a device adopted by the parties for securing usurious interest upon the notes loaned. In our opinion, the record contains no evidence in support of this view. It is not pretended that the pre-existing debt was not real and *bona fide*. There would have been no fraud in securing the payment of the whole of it, how then can fraud be charged on account of any provisions in the deed, whereby it is secured to be paid, from time to time, and by small instalments?

Nor do we find any proof or indication of fraud in the fact, that some of the notes loaned were purchased by Wilson at a heavy discount. Those purchases were made from third parties, in whose hands Mason & Son had placed the notes, and who held them for sale in the market; they were made in August and September 1857, eighteen months after the execution of the deed, and there is no proof in support of the charge, that at the time of the execution of the deed, there was any intention, on the part of either Thomas Wilson or Wilson & Co., to buy the notes at a discount.

The record furnishes no evidence in support of the sixth point made by the appellees; the arrangement was entered into voluntarily, on the part of Mason & Son; no advantage appears to have been taken of their necessities, by the mortgagees; on the contrary the latter assumed very heavy pecuniary responsibility, the benefit of which was derived by the former;

and so far as the circumstances attending the transaction are disclosed, there was nothing inequitable in its terms.

There being no sufficient evidence to establish fraud in fact, in the execution of the deed, we are next to inquire whether it is fraudulent and void in law?

The amounts which it was intended to secure are expressed in the deed, as required by the Act of 1825, ch. 50, and we concur with the judge of the circuit court in saying, that no valid objection can be made to it, either under that act, or by reason of its being intended to secure future advances. Deeds to secure future loans or advances, if *bona fide* made, have always been sanctioned by the common law, and if unexceptionable in other respects, their validity cannot be questioned in Maryland: See *Cole & Albers vs. Runge*, 1 *Gill*, 412.

Much stress has been laid upon the fact, that by the terms of this deed, the possession of the property was to remain in the grantors, until default should be made by them, in the payment of one or more of the notes, to be loaned and advanced to them. Such a provision, it is said, is in effect a conveyance of property for the use and benefit of the debtors, and therefore void under the statute of 13*th Elizabeth*, as tending to "delay, hinder or defraud creditors."

If it were a conveyance of the debtors' property, for the payment of their debts, such a reservation would avoid the deed. This has been repeatedly decided by this court. See *Green & Trammell vs. Trieber*, 3 *Md. Rep.*, 11. *Sangston vs. Gaither, Ibid.*, 40. *Malcolm vs. Hodges*, 8 *Md. Rep.*, 418.

But this is not a conveyance for the benefit of creditors; it is not an assignment of the property of the grantors, for the payment of some or all of their debts. It is in the nature of a mortgage, and in such an instrument, a stipulation that the mortgagors shall remain in possession, is no evidence of fraud. "If that were so, then no mortgage could be valid." *United States vs. Hooe*, 3 *Cranch.*, 89. In the case of *Green & Trammell vs. Trieber*, this court has said: "We must observe the distinction between conveyances of the whole or a part of the debtor's property, as a security for particular debts, on an

agreement with the creditors for further time, and voluntary conveyances by debtors for the payment of their debts; the latter the law presumes to be executed, with reference to the benefit of the creditors, and not to the advantage of the debtor." "In one class, the object is to gain time for the debtor, by agreement with the creditor, in which it is quite consistent with the nature of the transaction, that the former shall keep possession. In the other, the debtor offers his property to his creditors in payment of their claims, or for distribution, according to such priorities as he may prescribe. Payment being the professed object of the assignment, it must not contain any provision to defeat or hinder this purpose, beyond such reasonable delay, as may be incidental and necessary to the proper execution of the trust." 3 *Md. Rep.*, 36.

It is very important in this case to keep this distinction in view. Many of the principles and decisions, cited by the appellees, are applicable only to deeds of the latter description; while the instrument before us belongs to the former class of conveyances. It is a mere security for debts due and to be incurred; and so far from operating to defraud, hinder or defeat the claims of other creditors, its legal operation was to grant time to Mason & Son, and to increase their means and ability to meet their responsibilities, while their property remained responsible for the claims of their other creditors, subject to the lien of the mortgagees.

It seems to us to be no well founded objection to such a deed, that it might afford an opportunity for fraudulent collusion, between the mortgagors and mortgagees, whereby the property might seem to be liable for a large sum and not, in fact, be liable at all, as if the notes were not called for. The same objection might be made to every mortgage to secure future advances; parties may make corrupt bargains in any case. But in the absence of all proof, impeaching the *bona fides* of the transaction, such instruments are not within the operation of the statute against fraudulent conveyances.

Some objection has been made to the deed, on the ground that the power of sale conferred upon the trustees, in case of default, is vague and indefinite, but we do not consider this

objection as well founded. The terms of the deed, in this respect, are clear and explicit, and no authority has been produced, to show that they are in contravention of any principle of law. Nor do we concur in the view presented by the appellees, that the omission to state, on the face of the deed, the time when the first advances were to be made, renders the deed invalid. The advances were to be made "from time to time, as may be desired by Mason & Son," and were to be continued for a specific period "from the date of the first loans." It is said, that the omission to state in the deed the time of the first loan, makes the period of the duration of the transaction, *indefinite*, and that this avoids the deed.

No valid objection can be made to a mortgage, on account of the length of time it has to run; nor can we see any reason why, in the case of a mortgage to secure future loans, it is necessary to designate, in the deed, the length of time during which the loans stipulated for are to be continued. There is no such requirement in the Act of 1825. In this case, however, if it were material for the appellants to show the length of time, during which the transactions were to continue, we have no doubt, that it is perfectly competent for them to rely, for that purpose, upon the proof in the cause. This proof is not excepted to, and no exception to it could have been sustained if made; it was offered by the appellees and shows, that the first loans were made on the 15th of February, the day on which the deed bears date. Several decisions of this court have been cited, for the purpose of establishing the proposition, that the validity of a deed executed by a debtor, for the benefit of his creditors, must be determined by the *face* of the instrument, and does not depend upon extrinsic circumstances, or in other words, that if a deed be fraudulent in law, for matter appearing upon the instrument itself, it cannot be made good by averment. This proposition is no doubt well established, but it is not applicable to the question before us. Here the deed is not void in law, for want of a definite statement, on its face, of the time when the first loans were to be made, or of the period, during which they were to continue. The deed provides for a continuance of the loans of notes, to the amount of

$36,000. for three years *after the time of the first loan*, and of $18,000, for one year longer.

To show the actual amounts loaned, and to fix the duration of the transaction, by showing the time when the first loan was actually made, extrinsic proof may be offered; such proof does not contradict the deed, or alter, in any respect, its legal operation and effect. In the case of *Cole & Albers vs. Runge*, 1 *Gill*, 412, the deed purported, on its face, to be for and in consideration of $10,000 in hand paid to the grantors, and contained a proviso for the payment of $10,000, with interest by a certain day, and it was held, that parol evidence was admissible for the purpose of showing that the deed was made to secure advances made, and to be made, to the mortgagors, to the extent of $10,000. The principle upon which that decision was put is equally applicable here, viz., that the evidence did not "have the effect of changing the character and legal operation of the deed."

The evidence in the cause shows, that after the date of the deed of trust, Thomas Wilson and Thomas Wilson & Co. went on to loan their notes to William Mason & Son, from time to time, according to their agreement; the transactions, so far as these loans are concerned, commenced on the 15th of February 1856, and ended on the 2nd of November 1857. On the 22nd of November 1856, William Mason & Son sold the property mentioned in the deed of trust, and executed a bond of conveyance of that date to Thomas M. Mason, Charles C. Grafflin and Charles Mason, by which they agreed to sell the said property for $127,556, and received therefor, from the purchasers, ten promissory notes, amounting in the aggregate to that sum, with the interest thereon. The bond of conveyance was duly recorded on the 1st day of December 1856, and contains the following stipulation:

"But in case of any default in payment of the aforesaid promissory notes, or any of them, then it is hereby declared to be the agreement of the parties to these presents, the entire indebtedness, on account of all the aforesaid promissory notes, shall then be considered due and demandable, at any time, by the obligors on the bond," and then, and in that case, authority

is given to the obligors to proceed and sell the land, property and premises, and apply the proceeds of sale to the payment of said notes.

It appears that one of the promissory notes, mentioned in the bond of conveyance, was passed, by Mason & Son, to the Bank of Commerce, and that three of them were passed to J. B. Russell and T. P. Russell, who passed them to C. W. Ellis.

At the time of the execution and recording of said bond of conveyance, there were outstanding notes loaned by Wilson and Wilson & Co., under the deed of trust, to the amount of $36,000; these were afterwards paid by W. Mason & Son, and other notes, to the same amount, were loaned to them, which were also paid, and then, between the 24th of July 1857 and the 2nd of November 1857, other notes, to the amount of $36,000, were loaned and advanced by said Wilson and Wilson & Co., to Mason & Son, under the deed of trust, and default having been made in the payment of these last notes, or some of them, the question arises, whether the appellants, Wilson and Wilson & Co., are entitled to a priority of lien upon the property over the appellees, who claim under the bond of conveyance?

This question arose in the case of *Gordon vs. Graham*, 7 *Vin. Abr.*, 52 *E. Plac.*, 3 and 2 *Eq. Cases Abr.*, 598.

That case is thus stated in *Viner*: "A. mortgages to B. for a term of years to secure the sum of —— already lent to the mortgagor, as also such other sums as should hereafter be lent, or advanced to him. Afterwards A. makes a second mortgage to C. for a certain sum, with notice of the first mortgage, and then the first mortgagee having notice of the second mortgage, lends a further sum, &c. The question was, upon what terms the second mortgagee shall redeem the first mortgage?

"Cowper, Lord Chancellor, held, 'that the second mortgagee shall not redeem the first mortgage, without paying all that is due, as well the money lent after, as that lent before the second mortgage was made; for it was the folly of the second mortgagee, with notice, to take such a security.'"

A contrary principle seems to have been decided by a majority of the Supreme Court of Ohio, in *Spader vs. Lawler*, 17 *Ohio Rep.*, 371. We think there is great force in the opinion delivered by the dissenting judge in that case. The ruling of the court however, was based somewhat upon the effect of the statute of that State relating to mortgages, and is not strictly applicable here.

With the exception of *Spader vs. Lawler*, we have seen no case overruling the decision in *Gordon vs. Graham*. It is cited as authority by *Powell*, in his learned work on mortgages *vol.* 2, *page* 533, and by *Coote*, in his law of mortgages, *(69 Law Lib.,* 487.) Mr. *Coventry*, in his notes to *Powell vol.* 2, *pages* 533, 534, suggests some doubts as to the soundness of the principle of *Gordon vs. Graham*, but concludes his remarks by saying, "that he individually places but slender dependence in the force of their application." See *Gibson vs. Ingo,* 6 *Hare.*, in 31 *Eng. Ch. Rep.*, 112.

In the case of *Brinkerhoff vs. Marvin,* 5 *Johnson's Cases in Chancery*, 326, Chancellor Kent, after citing *Gordon vs. Graham,* and *Shirras vs. Caig,* (7 *Cranch,* 34,) says: "Again, in *Livingston vs. M'Inlay,* 16 *Johns. Rep.*, 165, the Supreme Court (of N. Y.) observed, that if it was a part of the original agreement, a judgment may be entered as a security for future advances, beyond the amount then actually due, in like manner as a mortgage may be held as a security for future advances. The limitation to this doctrine, I should think, would be, that when a subsequent judgment or mortgage intervened, further advances after that period could not be covered."

But the same learned chancellor in his commentaries, *vol.* 4, *page* 175, says: "So a mortgage or judgment may be taken, and held as a security for future advances and responsibilities, to the extent of it, when this is a constituent part of the original agreement, and the future advances will be covered by the lien, in preference to the claim under a junior intervening incumbrance, with notice of the agreement."

Upon this question there is some conflict of authority, but after an examination of the cases cited at the bar, and some

others, we are of opinion that the weight of authority sustains the principle established in *Gordon vs. Graham*.

The subject of mortgages securing future advances has been elaborately considered in many cases, of which a number are clearly reviewed in *Truscott vs. King*, *2 Selden's Rep.*, 160, 161. An examination of that case will show, that at common law a mortgage *bona fide* made, may be for future advances, as well as for present liabilities. Our Act of 1825, modifies the common law only in the particular which we have mentioned.

If the junior creditor may, "by inspection of the record, and by common prudence, ascertain the extent of the incumbrance," the first incumbrance must prevail.

It results from what has been said, that the deed of trust of the 15th of February 1856, is a valid and binding instrument, and that the mortgagees therein named, Thomas Wilson and Thomas Wilson and Company, are entitled to have the land and premises and property, therein described, sold by the trustees named in said deed; and the proceeds of such sale applied in accordance with the provisions of the deed; and that the claims which may be due from William Mason and Son, for and on account of the notes loaned to them under said deed, are entitled to be paid out of the proceeds of such sale, in preference to the claims due the complainants. A decree will be passed reversing the order of the Circuit court granting the injunction, and the order continuing the injunction, and the cause will be remanded.

(Decided May 31st, 1859.)

*Orders reversed and cause remanded.*