(Decided May 12th, 1865.)

---

MICHAEL TREIBER *vs.* WILLIAM LANAHAN, J. PHILIP ROMAN, and others.

PARTNERSHIP, PARTNERS: TENANCY IN COMMON: EVIDENCE: AGREE-MENT, CONSTRUCTION OF: ACCOUNTS: INTEREST.—By an agreement concluded on the 21st May 1849, A. B. agreed to lease for ninety-nine years, to M. T. and J. M. F. part of a lot fronting sixty feet on Baltimore street, in the town of Cumberland, for $300 per annum, payable semi-annually; the said parties of the second part agreeing to build on said lot a substantial brick house, as described in the agreement. On the 3rd of December 1850, said building being partly finished, M. T. and J. M. F., to secure a debt of $1,800, executed to A. B a mortgage of certain real estate, including the said leasehold property. On the same day the same grantors executed an instrument of writing, under seal, (Ex't D,) reciting the said mortgage, and declaring their respective interests in the said property to be fixed according to the payments made by

Treiber *vs.* Lanahan, *et al.*

each of them for the improvements thereon. On the 14th of April 1851, J. M. T., being also indebted to L., executed a deed of the same property to J. P. R., in trust for the payment of said debt and subsequent advances. The property having been sold to foreclose the mortgage to A. B., and the mortgage debt having been paid, and a controversy having arisen between M. T. and L., on the distribution of the balance of the proceeds of sale, as to the nature and extent of the interest of J. M. F. in said balance,—L. claiming under the deed of trust to the extent of L's interest,—M. T. produced in evidence an agreement between the said J. M. F. and himself, (Ex't G,) dated March 4th, 1852, setting forth a settlement of accounts between them, and declaring their respective interests in the leasehold property to be in proportion and to the amount paid and to be paid by each towards the improvement of said property, HELD:

1st. That the relation existing between M. T. and J. M. F., in their ownership of the leasehold property, was not that of partners; but that under their agreement with Beall, they held an equitable estate as tenants in common in the lot of ground therein described.

2nd. That the statement or settlement made by J. M. F. with M. T., on the 4th of March 1852, marked Exhibit G, was properly excluded from the consideration of the case, that settlement being as to Lanahan *res inter alios;* his rights under the deed of trust of April the 14th, could not be impaired by any declarations of J. M. F. thereafter made.

3rd. That Exhibit D, however, is of itself evidence to show that although Trieber and Flurshutz held the hotel property as tenants in common, they did not hold it in equal moieties; but that each should hold an interest to be fixed according to the payments made by each in improving the property.

4th. That the agreement evidenced by Exhibit D, was a valid agreement; being made before L's rights accrued, it was not in derogation of the same, and he therefore took under the deed only such interest in the property as J. M. F. was entitled to under his agreement with M. T.

5th. That the agreement is not to be construed as having reference only to the building described in the contract for lease, but to the erection of a building with appurtenances and internal arrangements suitable for a large hotel, including the cost and expenses of the improvements made after the execution of the deed of trust, as well as before.

6th. That in stating the account, it is necessary to debit M. T. with all moneys received for rent, as well as with all money or property of J. M. F. which came to his hands; allowing to him credits for all moneys paid by him towards the lot and improvements, and moneys paid for J. M. F.

7th. The whole mortgage debt of A. B., being a prior lien, is first to be paid out of the fund, the shares of M. T. and J. M. F. respectively contributing their proper proportions thereof, according to their agreement in Exhibit D.

8th. That M. T. is chargeable with interest on the purchase money of the "Revere House" from the time of his purchase from the trustee.

APPEAL from the Equity Side of the Circuit Court for Allegany county.

The bill of complaint in this cause was filed by the appellant on the 29th of May 1852, for the purpose of obtaining an injunction against the appellee, Roman, restraining him from making sale of a lot of ground lying on Baltimore street, in the town of Cumberland, and adjoining the depot of the Baltimore & Ohio Railroad, with the improvements thereon, known as the "Revere House;" which said lot and premises had been conveyed to the said Roman by deed of trust of April 14th, 1851, by John M. Flurshutz and wife, in trust to secure the payment of the sum of $2,352.15, due by the grantor to William Lanahan, and also to secure such other advances as might be made to him by the said Lanahan, not to exceed, at any one time, the sum of $3,000. The deed of trust gave to the trustee the power to sell in case of failure to pay the sum of $2,352.15, with interest from the date, within nine months of the date of said deed, and such further debts as might thereafter be due from Flurshutz to said Lanahan, within six months after the same shall have been contracted. On the 13th of March 1852, Flurshutz having failed to pay, according to the terms of the deed of trust, and having left the State, the trustee, Roman, had advertised the said property for sale under the deed of trust. The injunction was granted as prayed. A further object of the bill was to obtain a decree for an account against the said Lanahan.

It appears from the evidence in the cause, that prior to the execution of the deed of trust, on the 21st of May 1849, Alpheus Beall entered into an agreement with the appellant and the said John M. Flurshutz for a lease for ninety-nine years of the lot of ground in controversy, upon which the "Revere House" was subsequently erected—the lease to be according to a form specified—at an annual rent of $300; and the lessees to build on the lot a brick building, fifty-six feet front, sixty feet deep, and three stories high.

On the 3rd day of December 1850, also prior to the deed of trust, when the building was partly finished, Treiber and

Flurshutz executed a mortgage to Alpheus Beall for $1,800 upon the said lot, and also upon other property belonging to each of the grantees, individually.

Pending the proceedings in this cause, which was No. 930 upon the docket of the said Court, Alpheus Beall, on the 13th of June 1855, filed a bill for the foreclosure of his mortgage of $1,800, and procured a decree for a sale of the lot and the "Revere House" property, and the same was sold to Michael Treiber, by William W. McKaig, the trustee appointed by said decree, on the 1st of February 1857, for $9,000,—the number of the case in which said decree was passed being 1,123 on the docket of the said Court.

A bill was then filed by Lanahan to vacate the decree in No. 1,123, and to set aside the sale made in pursuance thereof. But afterwards the following agreement of counsel was filed:

"Michael Treiber *vs.* William Lanahan and others, No. 930, in the Circuit Court for Allegany county, as a Court of Equity:—In this case, as well as the case of Alpheus Beall *vs.* Michael Treiber, John M. Flurshutz, and Caroline, his wife, being No. 1,123 in said Court, and in the case of William Lanahan *vs.* Alpheus Beall and others, being No. 1,198 in said Court, it is hereby agreed that the sale made by William W. McKaig, and reported by him as trustee in the said cause of Alpheus Beall *vs.* Michael Treiber, John M. Flurshutz, and Caroline, his wife, being No. 1,123 in said Court, shall be ratified and confirmed by said Court. But it is further agreed that the ratification shall have no other effect than to vest the title to the 'Revere House' property, mentioned in said report of the trustees, in the said Treiber, and the proceeds of said sale of said 'Revere House' property shall stand in the place of the said property, and shall be subject to the order and decree of said Court, to be passed in the first above named No. 930, and to distribution among the parties to said cause, No. 930, according to the rights of the parties to said cause, No. 930, as they shall be therein determined. The proceeds only of

said sale, after deducting the mortgage debt, interest and costs to the said Alpheus Beall, so far as they are charge-able to said 'Revere House' property, shall be held sub-ject to and distributable in the said case No. 930. It is also agreed that the account or distribution of the proceeds of said sale of said 'Revere House' property, to or upon the mortgage of said Beall, which shall be finally estab-lished and decreed in this cause, No. 930, shall also be rati-fied and confirmed in said cause No. 1,123, and that either party may use the papers or any part thereof in the case No. 1,123 as evidence at the hearing of this case, so far as they are relevant and competent evidence in this case, and that the bill in the case of said Lanahan *vs.* said Beall and others, being No. 1,198 in this Court, shall be dismissed; and nothing herein contained shall be so construed as to determine the amount of the mortgage debt due to said Beall, which shall be chargeable to said Treiber or to said Flurshutz, or to determine the amount of the proceeds of said sale of the 'Revere House' property, after deducting the amount due to said Beall, as aforesaid, which shall be distributed to said Treiber or to said Lanahan."

The several matters in issue between the parties to the cause having been concluded by this agreement, except in so far as is expressly reserved by its last clause, it is only necessary to notice particularly such portions of the evi-dence as are applicable to the questions so reserved.

The witness Weigart—examined under the commission for testimony—testified that he was employed by Lanahan from September 1849, until July 1853, as clerk, salesman and shipping clerk; that it was his duty to pack, mark and deliver all goods sold by Lanahan, and when goods were to go by railroad or other conveyance from the city, his duty was to see them delivered to the railroad or otherwise, pro-perly marked for their destination, and to take receipts for the same; that he had examined the several papers filed by Lanahan, relating to his account with J. M. Flurshutz, and found them correct; that each and every item contained

in said accounts were sold and delivered by Lanahan to Flurshutz at the prices stated, except such items as are charged for drayage, &c., and that they also were proper and usual charges for the delivery of goods, and were properly chargeable to said Flurshutz.

It appears from the accounts thus proved, that on the 13th of March 1852, there was due to Lanahan from Flurshutz the sum of $3,191.04.

The defendant, Roman—examined under an order of Court—testified that on the morning of the day on which the deed of trust was prepared and executed, and before its execution, Alpheus Beall stated to the witness, in answer to inquiries made by him, "that he had agreed to lease the lot to Michael Treiber and J. M. Flurshutz, as tenants in common, that each was entitled to one undivided half interest therein," &c. And again, that he had held several conversations with Michael Trieber in regard to the building of the hotel or improving the lot on which the "Revere House" now stands, and that Treiber had told him "that he and J. M. Flurshutz had leased the lot from Alpheus Beall, as equal owners," &c. And again, that on the day the said deed of trust was executed, or the day before, John Flurshutz stated to William Lanahan, in his, witness's presence, "that he owned one undivided half of the 'Revere House,' that he and Treiber had leased the lot from Alpheus Beall, that each had one undivided half interest in the lot and buildings thereon," &c.

Jacob H. Hefelfinger, produced on behalf of the defendants, testified that he, with Conton, rented the "Revere House" from April 1851, to April 1852, from Michael Treiber and J. M. Flurshutz, for $900 per annum; that he again held the property under an agreement with Treiber and Flurshutz for two years, commencing April 1852, and ending April 1854, at $1,000 per annum; that of the rent of the first of these two years, he paid $500 to Jacob Albert, or Albert & Son, through one of the Cumberland banks, upon two of his own notes, executed to Michael

16    v.23.

Treiber, and by him transferred to said Albert; and that the remaining $500 was paid to Alpheus Beall, by the request of Michael Treiber. The rent of the second year was paid to Michael Treiber, in furniture purchased by him at the sale made by George A. Thruston & Bro., as his trustees, in March 1856; and that he surrendered possession of the "Revere House" on the 10th of March 1856, to M. Treiber, who took possession of it and carried it on as a hotel.

A mass of testimony in reference to the details of the account between Treiber and Flurshutz, was taken under the several commissions for testimony, which, in the present aspect of the case, need not be stated; all such details being referred to the Court below; this Court, in its opinion and order remanding the cause for further proceedings, settling only the principles on which the account should be stated.

The plaintiffs' Exhibit D, in evidence in the cause, was in the following words:

"Whereas, John M. Flurshutz, Caroline Flurshutz, his wife, and Michael Treiber, have this 3rd day of December 1850, executed a joint mortgage for $1,800, at twelve months, to Alpheus Beall, on John M. Flurshutz's house and lot, on Mechanic street, joining south on lot of Dr. James Smith, and his interest to be fixed according to the payments made by each of us on tavern house, joining Baltimore & Ohio Railroad Depot, and fronting on Baltimore street fifty-six feet, and the house and lot of M. Treiber, on South Centre street, joining the house of Thomas Shriver, Esq., and his interest in tavern house joining the Baltimore & Ohio Railroad Depot, fronting on Baltimore street fifty-six feet; and whereas, said mortgage binds jointly and severally the said John M. Flurshutz, and Caroline, his wife, their heirs and assigns, and Michael Treiber, his heirs and assigns,—therefore, the object of this instrument is to specify more fully the nature of said mortgage, to wit, the said John M. Flurshutz received and applied to his own use fourteen hundred dollars ($1400) out of the proceeds of

said mortgage, and 'the said Michael Treiber received and applied to his own use four hundred dollars, ($400.) In consideration of the above specifications, the undersigned have executed each 'and severally to one another their notes, on stamp paper, at twelve months, each bearing interest from date, as follows: one note drawn by John M. Flurshurtz, in favor of M. Treiber, or order, dated 3rd December 1850, twelve months after date, for fourteen hundred dollars, ($1400,) and one other note drawn by M. Treiber, in favor of John M. Flurshutz, or order, dated 3rd December 1850, twelve months after date, for four hundred dollars, ($400,) the said notes to be null and void and of no effect on payment of fourteen hundred dollars and interest, at maturity of the mortgage, on the part of said John M. Flurshutz, and the payment of four hundred dollars with interest, at maturity of the mortgage, on the part of Michael Treiber.

"In witness whereof, we have this day affixed our hands and seals, the words on the seventh and eighth line interlined before signing.       John M. Flurshutz, (Seal.)
                                      M. Treiber,          (Seal.)"
          "Test:—*Emil Nefflin.*
"*Cumberland,* December 3rd, 1850."

Exhibit G, excluded by the Court below from the consideration of the case, and also rejected by this Court as inadmissible, was as follows:

"It is mutually agreed this 4th day of March, in the year 1852, by and between John M. Flurshutz and Michael Treiber, both of the town of Cumberland; in the county of Allegany and State of Maryland, upon an examination of their accounts and payments made by each of them, in and for the new hotel and improvements on the lot in the town of Cumberland, adjoining the railroad depot, that Michael Treiber has paid on said house and lot the sum of ten thousand four hundred and seventy-nine dollars and twelve cents, and that the said John M. Flurshutz has paid the sum of four thousand four hundred and sixty-two dollars

and twenty-nine cents, on said house and lot, and improvements.   And it is further mutually agreed between them, that the interest and estate or property of each of the said parties, in the said hotel and lot of ground and improvements, is the proportional amount of the aforesaid payments made by each of them, and that the joint undivided interest in the said hotel and lot of ground has always been, and is hereby declared to be, in the same proportion and to the amount or value of the said payments made, and to be made by each, in paying for said lot and building, said hotel and improvements; and that hereafter, our respective interests in said joint property is to be settled according to our payments aforesaid, now made and to be hereafter made by each of us, for said hotel and lot.

"In witness whereof, we hereunto mutually sign our names and affix our seals on the day and year aforesaid.

M. TREIBER,          (Seal.)

JOHN M. FLURSHUTZ,     (Seal.)"

"Witness :— *W. W. McKaig.*"

The cause having been referred to the auditor, elaborate accounts were stated and filed, to which numerous exceptions were taken by both sides, and the cause having been set down for hearing and argued, the Court below, (PERRY, J.,) on the 17th day of December, 1860, passed a final decree setting forth the principles on which the account should be stated, wherein it was decreed: "that the proceeds of the sale of the 'Revere House' property made by William W. McKaig, as trustee, appointed by a decree of this court in the case of Alpheus Beall against Michael Treiber, John M. Flurshutz, and Caroline, his wife, standing as No. 1123, on the docket of this Court, and finally ratified by this Court in said cause, on the 20th day of June, in the year of our Lord 1860, be applied and distributed as follows:

"*First,* to the payment of the mortgage debt secured to Alpheus Beall by the mortgage bearing date the third day of December, in the year of our Lord 1850, and executed

by John M. Flurshutz, Caroline Flurshutz and Michael Treiber, with the interest thereon, and all costs and charges properly allowable to said Beall in said cause No. 1123, and commissions to the trustee in said cause No. 1123.

"*Second*, the balance which shall remain, shall be applied to the payment of the sum of three thousand one hundred and ninety-one dollars and four cents, to William Lanahan, with interest thereon, according to the tenor and effect of the deed of trust from John M. Flurshutz to J. Philip Roman, in the proceedings of this cause mentioned, and all costs and charges by the said Lanahan laid out and expended in this cause, to be taxed by the clerk of this Court.

"*Third*. Any balance that shall remain after paying the aforesaid claims, shall be distributed to the said Michael Treiber. And the said cause is hereby referred to the auditor of this Court, who is hereby ordered and directed to state an account between the parties to this cause, and the said William W. McKaig, trustee as aforesaid, and to distribute the proceeds of sale according to the rights of the parties as settled and determined by this decree."

From this decree the complainant appealed.

The cause was argued before BOWIE, (C. J.,) and BARTOL, and GOLDSBOROUGH, J.

*Thomas J. McKaig*, for the appellant, argued:

1st. That the agreement, for a lease and improvements No. 1, between Alpheus Beall, and Treiber and Flurshutz, was a joint undertaking as partners, as stated in the deed of trust to Roman, and that the rights of Treiber to deal with and settle the expenditure in improvements on the property with Flurshutz, as a joint co-contractor in the agreement, as his partner in the joint undertaking, could not be changed or altered by the deed of trust. That Flurshutz by no act of his could change or alter Treiber's rights under the contract, or force upon him a new partner in whom

he had no confidence. *Goodman & Wife vs. Stevens,* 5 *Gill,* 1. Unless Flurshutz's deed of trust to Roman operated as a dissolution of the partnership, it could not take from Flurshutz the right to transact the business of the partnership, and settle and adjust the account between himself and Trieber.

2nd. That "Exhibit D," made December 3rd, 1850, more than four months before Roman's deed of trust, conclusively fixed the interest which Flurshutz was to have in the property, to wit: "his interest to be fixed according to the payments made by each of us." This was no secret agreement, it is precisely upon the same footing as Exhibit No. 1, the agreement for the lease; neither were acknowledged or recorded, and Lanahan by his mortgage or deed of trust, took subject to all the equities between Trieber and Flurshutz in carrying out the contract, as well as the equities between them, as far as the contract had been executed. No reason can be assigned why Trieber and Flurshutz could not make such an agreement, and limit the interest of each according to the amount paid by each; consequently that agreement is just as valid as the agreement for the lease under which Lanahan claims. It was not in derogation of Lanahan's rights, for at that time he had none in the property. The same agreement was repeated in "Exhibit G," March 4th, 1852. *Sugden on Vend.,* 482. *Whitfield vs. Fausset,* 1 *Ves., Sr.,* 387. *Karthaus vs. Owings,* 4 *H. & J.,* 262. *Boon vs. Childs,* 10 *Peters,* 210.

3rd. Roman and Lanahan by their deed of trust from Flurshutz of the 14th April 1851, Exhibit E, for "all the undivided interest of John M. Flurshutz," &c., in the leasehold premises, by leaving him to contract for the improvements and rent the property for three years, from April 1st, 1852, constituted him their agent in the management of the property, and his settlement for that reason was valid as made by him and Trieber on the 4th March 1852. The mortgage debt of $2,352.15, set out in the mortgage, was then paid. Trieber did not know any other debt was contracted.

Roman, the trustee, and attorney of Lanahan, employed especially to collect this debt, wrote the lease for Flurshutz, and was silent about any claim of Lanahan. Trieber therefore had a right to ascertain by settlement, (whether Flurshutz acted as joint contractor in the contract or as agent for Lanahan,) the amount paid by each in the prosecution of the contract. That amount was ascertained by "Exhibit G." The lease of the 7th January 1852, shows that a large expenditure had at that time been made upon the property, and that it was nearly ready to be occupied as a hotel. *Smith vs. Leavitts,* 10 *Ala.,* 92.

4th. If the interest of each was according to the payments made by each, then there is no evidence in the cause except "Exhibit G," and the testimony of W. W. McKaig and George Flurshutz, proving that Exhibit to show what interest John Flurshutz had. It was not an undivided moiety, nor did he deed it to Roman as such, but the only proof on that subject shows that it was an interest according to the payments paid by each. The decree of the Court and the audit are therefore erroneous.

5th. The true principle on which to make the audit was that adopted by the auditor, under instruction from Trieber's counsel.

6th. By the deed of trust, neither Roman nor Lanahan were entitled to rents and profits; first, because the deed did not embrace them; and, secondly, because Flurshutz leased by and with the consent of Roman and Lanahan, (for Roman wrote the lease and signed it as a witness,) and Flurshutz, by his agent and attorney, so constituted by "Exhibit A," assigned the said rent to Michael Trieber, March 6th, 1852.

7th. Flurshutz, by the deed of trust to Roman, April 14th, 1851, conveyed his "undivided interest" in the contract for a lease with Beall. Flurshutz did not perform his part of that contract, but absconded the night of the 4th of March 1852. Neither Roman or Lanahan performed or offered to perform Flurshutz's part in that contract.

The contract, by its very terms, would have been forfeited, if Trieber had not carried it out. Flurshutz could not claim the benefit of a contract he had failed to fulfil, for this would be to enable him to take advantage of, or profit by, his own wrong. Lanahan can be in no better position than Flurshutz. Lanahan knew that Flurshutz had absconded; he made no offer to pay Flurshutz's share of the expenses and improvements, and cannot now claim any interest which Flurshutz could not claim. He cannot take advantage of or profit by Flurshutz's wrong.

8th. The memorandum of agreement for a lease, which has not yet been executed, between A. Beall and Trieber and Flurshutz, was a contract constituting Trieber and Flurshutz partners in building for their common interest, to derive a common profit therefrom. Such a contract, *Pothier on Partnership, page 7, 83 Law Lib.*, 15, says, is "a contract of partnership." If it be, there can be no doubt but that Trieber would have a lien on the partnership building for the reimbursement to him of his overpayments, even if. "Exhibit D" should be rejected, and they should be held to hold, each, an undivided moiety. *Hays vs. Wood,* 4 *Rand.* 272. *Poston vs. Ewbank,* 3 *J. J. Marsh.,* 43. *Scott vs. Nesbitt,* 14 *Vesey, Jr.,* 437. 1 *Story's Eq. Jur.,* 573, *sec.* 508, *Fifth Edition.* 2 *Story's Eq. Jur.,* 573, *secs.* 1215, 1216, 1219, 1234, 1235, 1236, 1237, *and note* 1. *Hamilton vs. Denny,* 1 *Ball & Beatt.,* 199. *Carmichael vs. Abrahams,* 1 *Dessau.,* 114. *Lake vs. Craddock,* 3 *Peere Wms.,* 158, where joint tenant or tenants in common were held to be partners. *Waugh · vs. Carver,* 1 *Smith's Leading Case,* 491, (43 *Law Lib.,* 717, *and notes to that case,* 726.) 2 *Fontblanque's Eq.,* 103, *note f. Lake vs. Gibson,* 1 *Eq. Ca. Ab.,* 291. *Carris vs. Lessee of Grant,* 5 *Binn,* 119, where one lays out money in improvements, it shall be a lien on the land. *Sugden on Vend.,* 407, 408, *chap.* 15, 1st *Amer. Edit., from 2nd London Edit. Lyster vs. Dolland,* 1 *Ves., Jr.,* 431. *Scott vs. Colmesnel,* 7 *J. J. Marsh,* 416. *Miller vs. Hughes,* 1 *A. K. Marsh,* 181.

*Brown vs. Robins,* 3 *New Hamp.,* 64. *Cumpston vs. Mc-Nair,* 1 *Wend.,* 463. *Solomon vs. Solomon,* 2 *Kelley,* 18,— where a joint purchase, made to participate in the profits and losses, is held a partnership as to the adventure or purchase.

9th. The decree in this case, and the audit made in accordance with said decree, cannot be sustained upon any principles known to the law or equity. The trustee reports the sale; he says he sold for $9,000, "to be paid in cash on the ratification of the sale by this Court." This was the contract made, reported and confirmed by the Court. The report was filed February 3rd, 1857. The trustees also filed Trieber's agreement of purchase, "for the sum of $9,000, to be paid in cash on the ratification of this sale by the Court." On the 7th March 1857, Lanahan, by his counsel, filed objections to the ratification of the sale, which were pending at the date of the decree. Thus Lanahan files objections and prevents the ratification of the sale, and then requires the purchaser to pay interest in the face of his contract with the Court. The Court, itself, cannot thus change the contract. The audit gives Trieber $2,857.16 less than he paid for improvements and liens after Flurshutz absconded in March 1852.

10th. The decree orders the payment of $4,888.67, to be made to Lanahan without ascertaining what interest he was entitled to out of the net proceeds of sale, and the balance, $2,857.16, to be distributed to Trieber, as though Trieber was a joint debtor with Flurshutz. The decree also determines that Beall's second mortgage of $1,800 shall be paid out of the proceeds, thus charging Trieber with one-half of that mortgage in the face of their agreement of December 3rd, 1850, "Exhibit D," all of which is inequitable and unjust.

11th. The objection of Lanahan to Exhibit D, because it was "a secret equity between Trieber and Flurshutz" cannot prevail, because by the deed of trust, Lanahan got but a secret equity—an interest in a contract for a build-

17      v.23.

ing lease, which was subject to the equities between the parties. It is not like a mortgage of a legal title, or the assignment of a mercantile piece of paper, but is like the assignment of a bond or a note over-due, or a judgment, in this, that it is subject to the equities between the parties existing at the time, or payments made before notice. *Sugden on Ven.*, 482, 1*st Amer. Edit. Kemp's Ex.*, *vs. McPherson*, 7 *H. & J.*, 336. *Whitfield vs. Fausset*, 1 *Ves.*, *Sr.*, 387. *Hardesty vs. Jones*, 10 *G. & J.*, 404. 1 *U. S. Dig.*, 248, *Pl.*, 109, and authorities there referred to.

12th. The contract for a lien with Beall, constituted Flurshutz and Trieber partners in the undertaking, and Lanahan can only claim whatever interest Flurshutz had after paying the debts due by the partnership, and Flurshutz's own debts to the partnership. 3*rd United States Dig.*, 91 and 92, *placita*, 51 and 52, and the authorities there referred to.

*J. H. Gordon* and *I. Nevett Steele*, for the appellees:

The only question for decision in this case now is, whether Lanahan is entitled to receive his claim of $3,191.04, with interest, out of the balance of the sum of $9,000, which remains after paying Beall's claim under the mortgage, with interest, costs, &c. Lanahan certainly became entitled to all the interest which Flurshutz had in the property on the 14th of March 1851. It is contended though, by Treiber, that Flurshutz and Treiber were partners, and held the "Revere House" property as partnership property; that the interest of each partner was to be in proportion to his advancements to the concern, and that Flurshutz had advanced only $4,462.29, and that this had all been consumed in payment of partnership debts. The only evidence to support this position is the agreement of the 4th of March 1852, and which was manifestly gotten up for the occasion, on the evening before Flurshutz absconded; but being made after the date of the deed of trust to Roman, it is not evidence against him or Lanahan. *Dorsey vs. Gassaway*, 2

*H. & J.*, 402, 408. *Carson vs. White*, 6 *Gill*, 17. *Stewart vs. Reddit*, 3 *Md. Rep.*, 67.

On the other side it is contended, that Treiber and Flur-shutz were tenants in common, and each entitled to a moiety of the property. The evidence fully supports this theory. The agreement with Beall for the lease is signed by each of the parties, individually. The form of lease agreed to, is that intended to be executed in fulfilment of the agreement, and would, of course, be filled up in the same manner; and if so filled up, then there is nothing on the face of these instruments to show anything but a tenancy in common, of equal undivided moieties. Act of 1822, ch. 162. *Gibbons, Ex. of Riley vs. Riley*, 7 *Gill*, 81. *Milburn vs. Guyther*, 8 *Gill*, 92.

There was no previously existing partnership for the use of which this property was leased, as in the class of cases such as *Ferreday vs. Weghlwith*, 1 *Rus. & M.*, 45; *Silkrig vs. Davies*, 2 *Dow.*, 230, 242. Nor were any funds belonging to a previously existing partnership used or expended upon it, as in *Phillips vs. Phillips*, 1 *Myl. & K.*, 649. There is no express agreement that the real estate shall constitute part of the capital stock of a partnership, and there are no facts from which such an agreement could be inferred. *Coles vs. Coles*, *Am. Le. Ca.*, 492. *Frink vs. Branch*, 16 *Conn.*, 260, 265, 270. *Wheatley's Heirs vs. Calhoun*, 12 *Leigh*, 273. *McDermott vs. Lawrence*, 7 *Serg. & Rawle*, 438. It stands, therefore, as a simple leasehold estate, which the lessees held as tenants in common. *Gilman vs. Merrill*, 8 *Verm.*, 77. *Milburn vs. Guyther*, 8 *Gill*, 95. 4 *John. Ch. Rep.*, 522. *Rundall vs. Rundall*, 7 *Sim.*, 271. And being tenants in common, they had the right to mortgage, and having mortgaged, the rights of Flurshutz passed to Lanahan.

Having ascertained from the records the condition of the property at the date of the mortgage, it was not incumbent upon us to go about the country seeking for *secret equities*. The secret agreement entered into by other parties, was not

binding upon us; it was made subsequently to the execution of our mortgage, and was kept secret for nearly two years.

It is said, however, that of the $1,800 secured by mortgage of 3rd December 1850, Flurshutz got $1,400, and Treiber only $400, and that Flurshutz's interest in the ·'Revere House'' property is chargeable in proportion. The only evidence to sustain this position, is the agreement marked Exhibit D, which was not recorded until the 18th of May 1852, and of which Lanahan and Roman had no notice. It is, therefore, a secret equity, and not binding upon them.  *Gill vs. McAttee*, 2 *Md. Ch. Dec.*, 255.

But let us try this case upon the theory of the appellant, and assume that the ''Revere House'' property was partnership property, and that the deed of trust of 14th April 1851, conveyed Flurshutz's interest, subject to the payment of partnership debts. The partnership had no other property, and Flurshutz, by this deed, conveyed away all his interest in the partnership, and therefore the partnership was dissolved from that time.  *Story on Part.*, 272.  *Ketcham & Black, vs. Clark*, 6 *Johns. Rep.*, 144.  *Margnand vs. N. Y. Man. Co.*, 17 *Johns. Rep.*, 525.

Treiber had notice of this act dissolving the partnership, and could do nothing to bind the firm afterwards, or subjecting the assignee's interest to additional burthens. The appeal is taken by Treiber, and there is no objection to the decree by any other person. Flurshutz did not even file an answer in the case; and the only question is, whether Treiber has such interest in the fund as to justify the Court in reversing the decree, for the purpose of giving him a larger portion of it.

A full examination of the accounts shows that Treiber and Flurshutz were acting on the principle of equal ownership in the property; and that view is corroborated and sustained by the entries of charges in several accounts of Flurshutz vs. Walton, and Treiber vs. Walton, where payments were made by each one of one-half of the bills for materials and

labor. *Mer. & Fars. Bk. vs. Travers,* 3 *Md. Ch. Dec.,* 224. Same case, 7 *Md. Rep.,* 345.

As to the objection of the appellant, that he has been charged with interest from the day of sale, and not from the date of the order of ratification, see *Ellicott vs. Ellicott,* 6 *G. & J.,* 135. The ratification relates back to the day of sale. *Brown vs. Wallace,* 4 *G. & J.,* 479.

The principal creditor is entitled to full benefit of any security given the creditors for the payment of the debt. 1 *Am. Le. Ca.,* 161. Therefore, though under the mortgage we could only claim the $3,000, by *subrogation* we are entitled to the full sum allowed in the Court below.

BARTOL, J., delivered the opinion of this Court:

We have examined this case with a good deal of care, and without entering into any particular statement of the pleadings and proofs contained in the record, shall briefly state the conclusions we have reached upon the whole case.

A majority of the Court are of opinion that the relation existing between Treiber and Flurshutz in their ownership of the "Revere House" property, was not that of partners. But that under their contract with Beall, they held an equitable estate, as tenants in common, in the lot of ground therein described.

The whole Court concur in the opinion that the Circuit Court properly excluded from the consideration of the case the statement or settlement made by Flurshutz with Treiber, on the 4th of March 1852, marked "Exhibit G." As to Lanahan, that settlement was *res inter alios;* his rights under the deed of trust of the 14th of April 1851, could not be impaired by any declarations of Flurshutz, thereafter made. The cases of *Stewart vs. Redditt,* and *Glenn vs. Grover,* 3 *Md. Rep.,* 67 and 212, referred to by the Judge of the Circuit Court, fully support his opinion on this point.

There is evidence in the cause, however, independent of Exhibit G, to show that although Treiber and Flurshutz held the hotel property as tenants in common, they did not

hold it in equal moieties; but that the contract between them was that each should hold an interest, to be fixed according to the payments made by each in improving the property. This agreement is evidenced by Exhibit D, executed on the 3rd day of December 1850. It is contended by the appellee that this agreement was a secret equity existing between Treiber and Flurshutz, of which Lanahan had no notice at the time he took the deed of trust; and being inconsistent with the title of Flurshutz, on the face of the contract with .Beall, it is not to affect Lanahan's rights.

We do not concur in this view. Lanahan is not a *bona fide* purchaser of a legal title; at the time the deed of trust was made, Flurshutz held only an equitable title under the contract with Beall, and Lanahan or Roman, as purchaser of an equity merely, took subject to prior equities. "Between equities, the established rule is, that he who has the prior equity in point of time, is entitled to the like priority in point of right." 2 *Story's Eq. Jur.*, sec. 1502. *Boone vs. Chiles*, 10 *Peters*, 177, 210. *Karthaus vs. Owings*, 4 *H. & J.*, 262.

The agreement between Treiber and Flurshutz, evidenced by Exhibit D, determining their respective interests in the property to be according to the amounts respectively contributed by them in its improvement, was a valid agreement; being made before Lanahan's rights accrued, it was not in derogation of his rights, and therefore he took under the deed only such interest in the property as Flurshutz was entitled to under his agreement with Treiber, to be determined according to the amount or proportion he had contributed, or might contribute, towards the cost of the lot and improvements.

We do not concur in the view suggested by the appellee, that the agreement is to be construed as having reference only to the building described in the contract for lease. The object and intention of the parties being to erect a building, with appurtenances and internal arrangements

suitable for a large hotel, they must have contemplated expenditures beyond the mere erection of the main building, and their whole subsequent conduct in fitting up and preparing the improvement for the purpose designed, demonstrates such to have been the intention of their agreement. Nor do we agree with the appellee in the position, that the cost and expenses of the improvement made after the execution of the deed of trust, are to be disregarded in making the computation necessary to ascertain the extent of Flurshutz's interest in the property. Those costs and expenses being in the contemplation of the parties from the beginning, and within the scope and purview of their agreement, and Lanahan having acquired his rights subject to the agreement, cannot be permitted to defeat it. And this view of the equitable rights of the parties is strengthened by the proof that these expenditures for improvements on the property, made after the deed of trust, were made with the knowledge of Roman, the grantee in the deed, who prepared the lease to Hefelfinger, in which Treiber and Flurshutz bound themselves to make extensive improvements on the property, which it must be presumed were necessary in order to secure a suitable tenant.

It results from these views, that in order to fix the proper basis for distribution of the fund in Court, arising from the sale of the "Revere House," it is necessary that an account be stated between Treiber and Flurshutz, showing the amounts respectively paid and contributed by them in paying for the whole improvement. In stating this account, as has been already said, "Exhibit G" cannot be considered as legal proof of the admissions contained in it.

In stating the account, it is necessary to debit Treiber with all moneys received for rent, as well as with all money or property of Flurshutz which has come to his hands, allowing to him credits for all moneys paid by him towards the lot and improvements, and moneys paid for Flurshutz. The result of such accounting will show the proportion or share of Flurshutz in the fund in controversy; out of which

is first to be paid so much of Beall's mortgage as Flurshutz owed, and the residue thereof, or so much thereof as may be required, ought to be awarded to Lanahan, in satisfaction, in whole or in part, of his claim secured by the deed of trust, and exhibited in the record.

Under the decision of this Court, in *Wilson vs. Russell*, 13 *Md. Rep.*, 494, Lanahan is entitled to receive $3,000, that amount being specified in the deed, with interest thereon; provided Flurshutz's share of the fund, to be ascertained as above stated, shall be sufficient to pay it. The excess of the claim of Lanahan, beyond this sum, is not covered by the mortgage.

The whole mortgage debt due Beall, being a prior lien, is first to be paid out of the fund, the shares of Treiber and Flurshutz respectively contributing their proper proportions thereof, according to their agreement in Exhibit D.

In the opinion of this Court, Treiber is chargeable with interest on the purchase money of the "Revere House" from the time of his purchase from the trustee. By the terms of sale, the money was payable upon the ratification of the sale; but the proof is, that from the time of his purchase Treiber was in possession of the property, receiving rents therefor, and it is equitable that interest should be paid by him on the purchase money.

In order that proper accounts should be stated in this case, and that a final order may be passed therein, in accordance with the views expressed in this opinion, this Court, without affirming or reversing the decree below, will remand the cause to the Circuit Court for further proceedings under the Act of 1832, ch. 302, (Code, Art. 5, sec. 28.)

*Cause remanded.*

(Decided May 23rd, 1865.)